Arthur L. LIMAN, as Trustee in Bankruptcy of A. H. Bull Steamship Co., Plaintiff,

v.

AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, Inc., Defendant.

No. 68 Civ. 117.

United States District Court
S. D. New York.

March 4, 1969.

Rosenman, Colin, Kaye, Petschek, Freund & Emil, New York City, for plaintiff; Ambrose Doskow, and Peter F. Nadel, New York City, of counsel.

Kirlin, Campbell & Keating, New York City, for defendant; Louis J. Gusmano, and Daniel J. Dougherty, New York City, of counsel.

MANSFIELD, District Judge.

In this declaratory judgment action plaintiff, as Trustee in Bankruptcy of A. H. Bull Steamship Company ("Bull"), moves pursuant to Rule 56, F.R.Civ.P., for summary judgment declaring the Trustee's rights to reimbursement under certain insurance policies issued by defendant. For the reasons indicated below, the motion is granted. The undisputed facts are as follows:

Bull, which was engaged in the business of operating merchant vessels before it went into bankruptcy, is the assured in certain indemnity insurance policies issued by defendant, for which Bull paid premiums in excess of $300,000 annually. Under the terms of the policies defendant, as insurer, agreed to indemnify Bull against loss, damages and expenses sustained by it as the owner, charterer or operator of certain vessels, including losses sustained as the result of personal injury claims, subject to a deductible of $1,000. Following a Chapter X Reorganization proceeding Bull was adjudicated a bankrupt and plaintiff was appointed its Trustee in Bankruptcy. In the meantime various actions have been instituted against Bull or its Chapter X Trustee by seamen and longshoremen for personal injuries, of which approximately 120 suits involving 114 accidents or occurrences fall within the coverage of the policies. Defendant has the right to assume the defense of the actions but is not obligated to do so. Following its refusal to do so, the Chapter X Trustee sought authority to retain special counsel to defend certain of the lawsuits. Thereupon the Government, a large priority creditor, opposed on the grounds that the estate would be diminished to the extent of the $1,000 deductible which would be attributed to each of the claims to be defended and that the expenditure of such sums by the Trustee would violate the Government's priority in the distribution of the assets of the estate. This position was upheld by the Hon. Edward J. Ryan, Referee in Bankruptcy, acting as Special Master.

Following defendant's refusal to take over the defense of the actions or to reimburse plaintiff unless it first satisfied the judgments or settlements in full, including payment of the $1,000 deductible (for which the debtor would not be entitled to reimbursement from defendant), the Chapter X Trustee brought the present action for a declaratory judgment to the effect that the $1,000 deductible requirement might be satisfied in one of several different ways, but pointed out that the Trustee could not implement any of its proposals without court approval and assurance of reimbursement from defendant because the $1,000 payments, as pointed out by the Government and Special Master, would deplete the estate and amount to a preference over other general creditors in violation of the Bankruptcy Act.

The stumbling block giving rise to the present controversy is found in the following provision of the insurance policies issued by defendant to Bull:

"The Association agrees to indemnify the Assured against any loss, damage or expense which the Assured shall become liable to pay *and shall pay* by reason of the fact that the Assured is the owner * * * of the insured vessel and which shall result from * * * :

"(1) Liablity for life salvage, loss of life of or personal injury to, or illness of, any person * * *.

"(e) Claims hereunder, * * * are subject to a deduction of $1,000 with respect to each accident or occurrence."

Plaintiff acknowledges that under the above-quoted clause the estate's right to indemnity for any loss sustained by it on account of an accident or occurrence

covered by the policies, after deduction of $1,000, depends upon a showing that the estate has made payment to the third party claimant of the amount for which reimbursement is sought from defendant. For example, upon satisfaction of a $10,000 judgment against the estate, plaintiff would be entitled to $9,000 from defendant, i. e., the $10,000 paid out by the estate, less the $1,000 deductible. The Trustee, however, cannot permit the claimant to retain the $1,000 not covered by the indemnity policy, since the $1,000 would then, because of the estate's insolvency, amount to an illegal preference. The Trustee therefore proposes to finance the $1,000 deductible in each case by defending each lawsuit pursuant to an agreement with the claimant to the effect that in the event of recovery or settlement in an amount in excess of $1,000, the estate will pay the full amount of the recovery to the claimant and the claimant will thereupon repay $1,000 to the estate, in exchange for which the claimant will become a general creditor of the estate in the sum of $1,000. The United States has by affidavit stated that it has no objection to the proposed plan, since there would be no invasion of the priority rights of the United States, as a creditor, in the bankrupt estate.

It is plaintiff's position that the source of the funds used to finance the $1,000 deductible is of no concern to defendant and should not affect defendant's obligation to reimburse the estate for any bona fide payments made to claimants on account of their personal injury claims covered by the policies. Defendant, on the other hand, contends that in order to be indemnified under the policies the estate must show that it actually "absorbed" the $1,000 deductible. The effect of defendant's position, it seems to be conceded, would be to enable it to escape payment of judgments possibly running into many thousands of dollars solely because the estate, due to its insolvency, is unable to pay out of its own funds the relatively few thousand dollars required to satisfy defendant's concept that the assured must "absorb" the de-

ductible. It is in this context that the Trustee seeks summary judgment pursuant to Rule 56, F.R.Civ.P., declaring that the procedure proposed by it, if carried out by the estate, will obligate defendant to reimburse the estate in the amount of the claims paid, less $1,000.

■ Since the undisputed facts reveal a substantial controversy with respect to adverse legal interests necessitating a determination as to the rights of the parties, the subject matter is appropriate for resolution by way of declaratory judgment. See Maryland Casualty Co. v. Pacific Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941). It is equally clear that in the absence of any specific provision of maritime law governing the issue here presented, see Kossick v. United Fruit Co., 365 U.S. 731, 742, 81 S.Ct. 886, 6 L.Ed.2d 56 (1960)— and we know of none—regulation of such marine insurance contracts is controlled by state rather than federal law. Wilburn Boat Co. v. Fireman's Ins. Co., 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1954). As defendant is a New York corporation, Bull had its principal place of business in New York and the only proof submitted indicates that the policies were delivered to Bull in New York, New York law should serve as the principal guide to the construction of this contract.

■■ New York's policy in construing provisions of insurance contracts dealing with the insurer's obligation to indemnify against loss was summed up in a recent decision, Henegan v. Merchants Mutual Insurance Co., 31 A.D.2d 12, 294 N.Y.S.2d 547 (1st Dept., Nov. 7, 1968), where the court, rejecting an insurer's contention that it was not required to make payments to the insured for the reason that the latter had failed to pay excess judgments over the policy limits, stated:

"To hold that prior payment must be shown before action by the insured, would permit the insurer to take advantage of the financial status of its insured and deprive the ultimate bene-

ficiary claimant of its judgment. Such a holding would be contrary to the purpose and spirit of our law." Cf. Meridan Trading Corp. v. Nat. Auto Ins., 45 Misc.2d 847, 850–851, 258 N.Y.S.2d 16 (Sup.Ct. 1964).

Guided by this fundamental standard of fairness and equity, the courts of New York have repeatedly held that an insured fulfills his obligations under an indemnity policy and is entitled to reimbursement when a judgment against him has been satisfied, and the insurer may not escape its obligation to indemnify by showing that the payment made by the assured was advanced to it by a third party or financed in some other fashion. Employers' Liability Assurance Corporation, Ltd. v. International Milk Products Co., 192 App.Div. 88, 182 N.Y.S. 337 (1st Dept. 1920); Campbell v. London & Lancashire Ind. Co. of America, 168 N.Y.S. 300 (Sup.Ct. Erie Co. 1917).

"The contention that the policy is one of indemnity with respect to damages, and not for liability merely, is sound; but I am unable to agree with the contention that it was essential to a right of action in the plaintiff by subrogation that the payment should have been made by the Shattuck Company from its own funds. * * *. It was at liberty, so far as the defendant is concerned, to borrow the money and pay the judgment, even though it was insolvent, or on the verge of insolvency. It was not essential that the judgments should be paid by its own funds. It was quite sufficient if they were paid for it, either by a loan or a gift of the money to it for that purpose, or at its request, by which it would incur an independent liability for reimbursement. In either instance, it would be entitled to recover over against defend-

ant, and it would incur a *loss* within the terms of the policy by the payment of the judgments." (192 App.Div. at 91–92, 182 N.Y.S. at 339)

While the above decisions do not deal with the precise type of condition precedent to indemnity claimed here, they make it clear that the test in New York is whether the assured has actually in good faith sustained the loss for which reimbursement is sought, and the insurer's obligation to indemnify may not be avoided because of the assured's insolvency.[1]

Applying these principles here, there is no doubt about the fact that under his proposal the Trustee would be seeking reimbursement only for losses actually sustained by the estate, without any resulting benefit accruing to it, and there is no evidence that the Trustee would be acting in bad faith in defending the pending lawsuits and paying any judgments obtained by the claimants against the estate. If defendant, on the other hand, were permitted to avoid making reimbursement simply on the ground that the Trustee had not ultimately paid the $1,000 deductible out of its own pocket, the result would indeed be to "permit the insurer to take advantage of the financial status of its insured and deprive the ultimate beneficiary claimant of his judgment." Henegan v. Merchants Mutual Insurance Co., *supra.* Here the ultimate beneficiaries are those personal injury claimants who have suffered losses because of Bull's negligence or the unseaworthiness of its ships. Defendant was paid very substantial premiums, more than $300,000 annually, to enable Bull to pay such claims. Yet, under its construction of the policy, it would in effect reap a windfall at the expense of the intended beneficiaries.

[1]. The policy thus expressed in New York decisional law stands upon a separate footing from that declared by the Legislature in New York's Insurance Law, McKinney's Consol.Laws, c. 28, § 167(1) (a), which provides that the insolvency or bankruptcy of the insured shall not release the insurer from its obligation to indemnify. The section was made inapplicable to marine insurance against personal injury, §§ 46(21), 112, subd. 2(c) (1), perhaps because of the controversy with respect to applicability of state direct action statutes to maritime law.

Such a result "would be contrary to the purpose and spirit" of New York law.

No purpose, expressed or implied, in the insurance policies in this case would be served by the condition precedent proposed by defendants to the effect that the $1,000 deductible must be "absorbed" by the estate. The purpose of such a deductible is not to assure that payment will be made only to solvent policy holders. Its primary purpose is to enable the insurer to avoid responsibility for small claims which are usually both numerous and costly. That purpose is fully served by the Trustee's proposal. The source of the $1,000 deductible should be of no concern to the defendant, since it is not required to reimburse the estate for losses under $1,000 suffered by the claimants. Furthermore, it is adequately protected against unjustified settlements or negligent defenses on the part of the Trustee; under the terms of the policy defendant has the right to assume the defense of any action and the assured must aid in such defense. In addition defendant is further protected by provisions to the effect that it need not indemnify the estate for unreasonable expenses incurred in the defense of an action or for settlements in excess of the amount authorized by defendant. Thus the defendant under the proposal made by the Trustee gets the full benefit of its bargain and does not relinquish any rights under its contracts. It is not, however, entitled to the windfall sought by it at the expense of the ultimate beneficiaries of the policies.

The situation here differs in significant legal and practical respect from that found in decisions cited by the defendant, where recovery was denied because there was neither a bona fide settlement of the judgment obtained by the claimant against the assured nor a payment made by the assured of the amount for which reimbursement was claimed. Stenbom v. Brown-Corliss, 137 Wis. 564, 119 N.W. 308, 20 L.R.A.,N.S., 956 (1909); Eberlein v. Fidelity & Deposit Co., 164 Wis. 242, 159 N.W. 553 (1916). Here the Trustee would satisfy each judgment against the estate and actually pay out of the estate to the claimant all funds for which reimbursement will be sought from defendant. Under the Trustee's proposed plan it is true that the estate will receive $1,000 back from each claimant. Since the estate is bankrupt, however, and the claimant becomes a creditor against it in the identical amount of $1,000, no benefit results to the assured. In any event, the effect of the arrangement is to impose upon the insurer the obligation to reimburse losses in excess of the deductible, which was the bargain defendant undertook. Such an arrangement can hardly be characterized as one made in bad faith and it differs sharply and materially from one where the assured shares, for its own benefit, monies which the insurer is obligated to pay only as reimbursement of losses sustained by the claimant. Here the assured gets no such benefit.

For the foregoing reasons the Court grants plaintiff's motion for summary judgment declaring that defendant will be obligated to indemnify plaintiff for payments made in accordance with the Trustee's proposed plan.

Settle order on notice.

