**Ali Galeb AHMED et al., Plaintiffs,**

**v.**

**AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC., et al., Defendants.**

**No. C 75 0004 WTS.**

United States District Court, N. D. California.

Jan. 26, 1978.

Richard Alexander, Boccardo, Blum, Lull, Niland, Teerlink & Bell, San Jose, Cal., for plaintiffs.

McCutchen, Doyle, Brown & Enersen, Mark O. Kasanin, Jack G. Knebel, John W. Bergholt, San Francisco, Cal., Kirlin, Campbell & Keating, Louis J. Gusmano, New York City, for defendants.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge.

This action is presently before the court for a decision on the merits of the action, having been submitted for decision upon an agreed statement of facts (Docket No. 33) and upon written briefs (Docket Nos. 35, 37, 40).

Plaintiffs were merchant seamen who served on vessels owned by three companies —Amercargo, Inc., Amercargo Shipping Corp., and American Leader Inc.[1] Plaintiffs filed actions in California state court against Amercargo for alleged personal injuries suffered while employed on Amercargo ships. Default judgments in favor of the plaintiffs were entered in those state actions but have never been satisfied due to the insolvency of Amercargo.

The present action was filed in state court in California and was subsequently removed to this court under 28 U.S.C. § 1441. In the present action the plaintiffs seek to recover from the defendant, the insurer for Amercargo, on the default judgments entered in state court against Amercargo.

Amercargo was at all relevant times a New York corporation with its principal place of business in New York. Defendant American Steamship Owners Mutual Protection and Indemnity Association ("the Association") was at all relevant times, and still is, a New York corporation with its principal place of business in New York. The Association is a non-profit mutual insurance association whose members are shipowners who insure their vessels with the Association. The Association is managed by Shipowners Claims Bureau, a New

---

1. These three companies will be referred to collectively as "Amercargo".

York corporation with its principal place of business in New York.

The Association provides, *inter alia*, marine protection and indemnity insurance covering personal injury liability for its shipowner members who, to obtain insurance coverage, must become members of the Association.

The Association provided marine protection and indemnity insurance coverage for Amercargo vessels for parts of the years 1969 and 1970. The policies were negotiated in New York and were signed and delivered in New York.

The policies provided as follows:

"The Association agrees to indemnify the assured against any loss, damage or expense which the assured shall become liable to pay and shall pay by reason of the fact that the assured is the owner . .. of the insured vessel and which shall result from [personal injuries sustained by crew members in the course of their employment aboard the insured vessels]".

In order to receive reimbursement from the Association under the policy, the member must first actually pay the loss.

Plaintiffs seek by this action to recover directly from the Association, Amercargo's insurer, under the insurance policies—even though Amercargo has not yet actually paid any of the plaintiffs' claims against it.

■ There are in general two principal types of insurance for liability for personal injury to others. One is liability insurance, obligating an insurer to pay damages which the insured is legally liable to pay. The other is indemnity insurance, obligating the insurer to reimburse or indemnify the insured only to the extent that the insured himself has actually paid damages. *See, Stuyvesant Ins. Co. v. Nardelli,* 286 F.2d 600 (5th Cir. 1961).

■ The chief distinction between the two types of insurance policies can be succinctly stated as follows:

"The chief difference between a liability policy and an indemnity policy is that under the former a cause of action accrues when the liability attaches, while under the latter there is no cause of action until the liability has been discharged, as by payment of judgment by the insured. That is, under an indemnity policy, the insured must have suffered an actual money loss before the insurer is liable." 7 Appleman, *Insurance Law & Practice* § 4261 (1962) (footnote omitted).

The insurance policies herein are clearly policies of indemnification. *Cucurillo v. American Steamship Owners Mutual Protection and Indemnity Association, Inc.,* 1969 A.M.C. 2334 (Sup.Ct., New York County 1969) (involving an insurance policy of defendant with substantially the same language as herein); *see also, Liman v. American Steamship Owners Mutual Protection and Indemnity Association, Inc.,* 299 F.Supp. 106 (S.D.N.Y.), *aff'd,* 417 F.2d 627 (2d Cir. 1969) (per curiam), *cert. denied,* 397 U.S. 936, 90 S.Ct. 946, 25 L.Ed.2d 116 (1970).

All parties agree that interpretation of the present maritime indemnity insurance contract is governed by state law for there is no well-settled applicable federal admiralty rule. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955).[2]

■ Under *Wilburn* we must look to federal choice of law rules in determining which state law is to be applied. *Navegacion Goya, S. A. v. Mutual Boiler & Machinery Ins. Co.,* 1972 A.M.C. 650, 653 & n. 1 (S.D.N.Y.1972); *see, Irwin v. Eagle Star Ins. Co.,* 455 F.2d 827 (5th Cir.) *cert. denied,* 409 U.S. 852, 93 S.Ct. 118, 34 L.Ed.2d 95 (1972); *Eagle Leasing Corp. v. Hartford Fire Ins. Co.,* 540 F.2d 1257 (5th Cir. 1976); *Liman, supra,* 299 F.Supp. at 108.

■ Under federal choice of law rules we must apply the law of the state with the most significant relationship to the insurance contract. *Navegacion Goya, S. A., su-*

2. Thus, we need not deal with the troublesome question of whether federal or local law should govern this maritime insurance contract. *See,*

*Kalmbach, Inc. v. Ins. Co. of Pennsylvania,* 529 F.2d 552 (9th Cir. 1976).

*pra,* 1972 A.M.C. at 653–54; *Restatement (Second) of Conflict of Laws* § 188. Here the insurance contracts were negotiated, issued and signed in New York. Amercargo and the Association are New York corporations with New York as their principal place of business. The contract was to be performed in New York in regard to the Association's duty to indemnify and reimburse Amercargo. Premiums and additional assessments, if necessary, for insurance coverage were payable in New York. Under all these circumstances New York law should be applied. *See, Liman, supra,* 299 F.Supp. at 108.

■ Under New York common law, an insurer under an indemnity insurance policy is not liable to an injured person who has obtained a judgment against the insured— even though the insured is insolvent and cannot pay the judgment. *Burke v. London Guarantee & Accident Co.,* 47 Misc. 171, 93 N.Y.S. 652 (Sup.Ct., Kings County 1905), *aff'd without opinion,* 126 App.Div. 933, 110 N.Y.S. 1124 (1908), *aff'd without opinion,* 199 N.Y. 557, 93 N.E. 1117 (1910); *Meridian Trading Corp. v. National Automobile & Cas. Ins. Co.,* 45 Misc.2d 847, 258 N.Y.S.2d 16 (Sup.Ct., New York County 1964); *Cucurillo, supra,* 1969 A.M.C. at 2335–36; *see, Seaboard Shipping Corp. v. Jocharanne Tugboat Corp.,* 461 F.2d 500, 504 n. 5 (2d Cir. 1972).

However, New York has changed this common law rule by a statute which now permits a direct action by the injured person against the insurer. New York Ins. Law § 167. However, this statutory modification of the common law rule is of no benefit to plaintiffs, for the statute is made expressly inapplicable to marine insurance contracts. § 167(4); *Meridian Trading Corp., supra,* 258 N.Y.S.2d at 18; *Cucurillo, supra,* 1969 A.M.C. at 2335–36; *Liman, supra,* 299 F.Supp. at 108 n. 1.

Plaintiffs contend that under New York law an injured person may directly recover from an insurer under a marine indemnity insurance policy when the insured is unable, because of insolvency, to pay a judgment against it in favor of the injured person, citing *Liman, supra.*

Plaintiffs' reliance on *Liman* is misplaced. *Liman* involved an action by an insolvent insured against the insurer,[3] seeking indemnity under the indemnity insurance policy. It was not an action by an injured person against the insurer seeking to recover on an unsatisfied judgment against the insured— as is the case herein. Secondly, in *Liman* the court construed the financial arrangements made between the insolvent insured and the injured persons (who had obtained judgments against the insured), through which the insured was to pay the injured person, as being in effect an actual payment by the insured, thus entitling the insured to indemnification and reimbursement from the insurer. *See, also, Seaboard Shipping Corp., supra,* 461 F.2d at 504 n. 5. Finally, the court in *Liman* distinguished the situation in *Liman* from that presented here, where the insured has never paid any of the claims against it or arranged to finance such payments. 299 F.Supp. at 110.

Indeed, the New York case most closely in point is *Cucurillo, supra,* involving the same type of insurance policy and the same defendant as herein. In *Cucurillo* the plaintiff had obtained a judgment against the insured, then brought a direct action against the insurer under the indemnity policy to recover on the judgment against the insured. The court, reviewing the relevant statutory and case law of New York, held that an insured is not directly liable to a judgment creditor of an insolvent insured under an indemnity insurance contract and dismissed the action.

Accordingly, applying New York law as most recently found in *Cucurillo,* the defendant Association is not liable to the plaintiffs herein under the defendant's indemnity insurance policies with Amercargo. Therefore, judgment will be entered in defendants' favor in this action.

We note that the result herein does seem harsh. However, it is clear that we should apply New York law under the facts of this

---

**3.** The defendant in *Liman* was the same defendant as in the present case.

case, and that both New York statutory and case law mandate the result herein. Under these circumstances this court is not free to inject its own notions of public policy.