CONOCO, INC., Plaintiff-Appellee,

v.

REPUBLIC INSURANCE CO., Defendant-Appellant.

No. 86–2590.

United States Court of Appeals, Fifth Circuit.

June 15, 1987.

Harold K. Watson, Laura Gibson, Liddell, Sapp & Zivley, Houston, Tex., for defendant-appellant.

S. Gene Fendler, Don K. Haycraft, Liskow & Lewis, New Orleans, La., for plaintiff-appellee.

Before WISDOM, WILLIAMS and HILL, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Conoco hired a ship owned by Bonanza. The ship was insured by Republic. The ship sank. Bonanza went broke. The parties went to court, and ten years later they are still there. This particular appeal is brought by Republic Insurance Co. from a summary judgment against it in favor of Conoco entered by the district court. We reverse.

## I. *The Facts: Bonanza's Foreman Messes Up.*

The underlying script of this show has been set out twice by this Court, at 677 F.2d 455 and at 706 F.2d 1365. We provide only a brief rerun. Appellee Conoco operated an offshore drilling rig in the Gulf of Mexico, and chartered from Bonanza Corp. the vessel Aqua Safari, a real workhorse of a barge. The Aqua Safari ranged over the area of the Gulf near the rig, performing a variety of chores. Due to the negligence of the Aqua Safari's master, the vessel sank underneath appellee's rig on January 1, 1977. Bonanza refused to remove the wreck, and in March 1977, appellee paid for the raising and removal of the sunken vessel.

Appellee Conoco then sued Bonanza and appellant Republic Insurance Co. for the cost of the salvage effort, $109,000.00.

Appellant had issued a policy of marine protection and indemnification covering the Aqua Safari, naming Bonanza and appellee as assureds. The district court held that appellee could recover the removal costs either from Bonanza or from appellant under the terms of the insurance policy, and held that Bonanza was not entitled to limit its liability. *Continental Oil Co. v. Bonanza Corp.*, 511 F.Supp. 62 (S.D.Tex. 1980). This Court, riding *en banc*, reversed the district court's judgment and held that appellee could not recover its costs under the insurance policy because it was not legally required to take any action with regard to the sunken Aqua Safari. *Continental Oil Co. v. Bonanza Corp.*, 706 F.2d 1365 (5th Cir.1983) (en banc).

Meanwhile, back at the ranch, Bonanza has been insolvent since the date of the sinking of the Aqua Safari. Nevertheless, two years after our *en banc* decision was announced, Bonanza executed a demand promissory note in favor of appellee, Conoco, for the cost of raising the Aqua Safari, and also an assignment of any insurance proceeds Bonanza might collect from appellant. At the time these documents were signed, appellee assured Bonanza's president and sole stockholder that it would not attempt to collect the promissory note from him. At trial, Bonanza's president testified that "I can't foresee where Bonanza would ever be able to [pay the note], or any reason why we will ever have any assets in there to pay it. We don't have any intentions of doing anything with it." Subsequent to signing these documents, Bonanza claimed it had thereby paid appellee for the salvage operation. Bonanza then made a demand for reimbursement under the insurance policy from appellant. Appellant refused to make payment under the policy to either Bonanza or appellee.

Appellee instituted the instant legal action against appellant for its failure to honor Bonanza's claim under the terms of the insurance policy. The district court granted appellee's motion for summary judgment, holding that Bonanza had paid the judgment ordered in *Continental Oil Co. v. Bonanza Corp., supra,* by means of the

promissory note and assignment agreement, and that therefore the indemnity provision of the insurance policy had been activated. The district court also held that appellee, as a third-party beneficiary of the insurance contract, was entitled to proceed directly against appellant.[1]

Appellant filed this timely appeal, disputing both of the district court's holdings. Because these holdings constitute conclusions of law, they are not protected by the "clearly erroneous" standard and we review them de novo. *Byram v. United States*, 705 F.2d 1418, 1421 (5th Cir.1983).

## II. *The Promissory Note: Straight Shootin'?*

Appellant first asserts that the district court erred in holding that Bonanza "paid" appellee by executing the promissory note. Because no payment occurred, appellant argues, it is not liable to Bonanza or appellant for the judgment. We agree.

In the opinion handed down by the initial posse of three judges in this case, *Continental Oil Co. v. Bonanza Corp.*, 677 F.2d 455 (5th Cir.1982), the distinction between an indemnity contract and a liability contract was addressed:

> The contract between Bonanza and Republic is written as an indemnity contract, not as a liability contract. In a liability contract, the insurer agrees to cover *liability* for damages. If the insured is liable, the insurance company must pay the damages. In an indemnity contract, by contrast, the insurer agrees to reimburse expenses to the insured

that the insured is liable to pay and has paid. An indemnity covers only the insured's actual expenses.

677 F.2d at 459. We find nothing in the subsequent proceedings in this case that disturbs this reading of insurance contract law.[2] The above-cited language is a correct statement of the law controlling the agreement contested here.

The issue is thus distilled to the question of whether Bonanza's execution of the promissory note was an actual expense. The question is not to be resolved, as is claimed by appellee, under *Liman v. American Steamship Owners Mutual Protection & Indemnity Association*, 299 F.Supp. 106 (S.D.N.Y.), *aff'd*, 417 F.2d 627 (2nd Cir.1969), *cert. denied*, 397 U.S. 936, 90 S.Ct. 946, 25 L.Ed.2d 116 (1970), which holds that an insolvent assured can finance payment by means other than an actual cash transfer.[3] *Liman* does not stand for the proposition that "payment" can be made by the use of a promissory note worthless from the day it is executed. By contrast, the *Liman* court declared that the test "is whether the assured has actually in good faith sustained the loss for which reimbursement is sought." 299 F.Supp. at 109.

Since the bankrupt assured in *Liman* was not completely bereft of assets, the *Liman* court was not faced with the situation we face in this case, where Bonanza is literally incapable of sustaining a loss. At the time the note was executed, Bonanza was not merely insolvent. It had no assets whatsoever. Moreover, Bonanza's presi-

---

1. The district court's judgment granted summary judgment in favor of Conoco, the plaintiff-appellee, and against Republic, the defendant-appellant. The Final Judgment, however, included the words, "and this case is dismissed." This show was not so easily cancelled, however.

    At oral argument, counsel for both appellant and appellee stipulated that the words "and this case is dismissed" were error, and that the plain meaning of the judgment was to grant Conoco the relief it requested in its motion for summary judgment. The conclusion of this Court is the same. Consequently, we find that the inadvertent inclusion of those final words in the district court's judgment does not affect the substance of that judgment or the validity of this appeal. *Cf. Carolinas Cotton Growers Ass'n v. United*

*States*, 785 F.2d 1195, 1200 (4th Cir.1986) ("[I]t is the conclusion of the court that the references to summary judgment are in fact simply mislabelings not affecting the validity of the finding of the court below.").

2. Although the panel opinion was vacated by the en banc hearing, the en banc opinion did not address the issue of Republic's duty to indemnify Bonanza, noting specifically that, "Bonanza has as yet incurred no expenses with regard to the removal of the Aqua Safari ..." *Continental Oil Co.*, 706 F.2d at 1368, n. 2. The issue was continued to a later episode.

3. That is, the fact of insolvency alone does not always require cancelling the show.

dent testified that the company was not likely to obtain any assets in the future, or to receive any infusions of capital. Bonanza not only had no intention of paying the promissory note, but offered no hope of eventually providing any value at all in exchange for the note. The company was dormant. Bonanza was gone, and it was not coming back.

■ In these circumstances, we cannot agree with the district court that Bonanza "paid" appellee. Appellant correctly emphasizes the interpretation of prepayment which was related to the Texas' Stowers Doctrine [4] as supporting its argument that the promissory note did not constitute payment. In *Smith v. Transmit Casualty Co.*, 281 F.Supp. 661 (E.D.Tex.1968), *aff'd*, 410 F.2d 210 (5th Cir.1969), prepayment to establish the liability of the insurance company was held to require proof of actual payment by the transfer of something of value. It is true, as Appellee points out, that the prepayment requirement under the Stowers Doctrine has since been abolished by statute. But the current status of prepayment under the doctrine is irrelevant. The germane point, illustrated by *Smith*, is that a worthless promissory note does not constitute payment under Texas law.

The same principle is at work in *Stuyvesant Insurance Co. of New York v. Nardelli*, 286 F.2d 600 (5th Cir.1961), where we held that an insurer would not become liable under an indemnity contract until the assured "has made some payment[,] and that the insurer is only liable to the extent those payments are made." 286 F.2d 602. Under appellee's standard for determining "payment," the limitation we set out in *Stuyvesant* would be without substance. We therefore hold that Bonanza did not pay appellee, and that appellant has in-

curred no obligation under the indemnity insurance contract.

### III. *Standing: A Deal's a Deal.*

Appellant argues second that the district court erred in holding that appellee could proceed against it directly to enforce the indemnity provisions of the insurance policy. We agree with appellant here also.

In our *en banc* opinion, we ruled that appellee could not proceed against appellant based on its status as a co-assured, but we expressly withheld ruling on the issue of appellee's standing as a third-party beneficiary. 706 F.2d at 1368, n. 2. The district court then, on remand, ruled that appellant did have standing to enforce the indemnity clause as a third-party beneficiary, relying on *Cumis Ins. Society v. Republic National Bank*, 480 S.W.2d 762 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r. e.). In *Cumis*, however, the policy at issue did not include a clause forbidding a third party to claim under it. The *Cumis* court expressly noted that had such a clause been in the contract, the third-party beneficiary would have had no right of recovery. 480 S.W.2d at 767 ("On the other hand, no such right [as a third-party beneficiary] exists if the contract expressly excludes the right of any third party to bring an action on it.").

■ The contract at issue here does include a clause barring a third-party suit:
> ... no person shall acquire any right against this Company by virtue of this insurance without the express consent of this Company.

This clause does not allow the accrual of third-party rights without appellant's consent. None of the actors in this case allege that appellant consented to appellee's accrual of a right of action against it. Even

---

**4.** The Stowers Doctrine, established in *Stowers Furniture v. American Indemnity Co.*, 15 S.W.2d 544 (Tex.Com.App.1929), allows an insured to recover damages from his insurer for the insurer's failure to settle a claim against the insured within the policy limits. Where the insurance policy gives the insurer complete control of the litigation, the Stowers Doctrine protects the insured in certain circumstances from having to pay a judgment greater than the policy amount

if the insurance company previously spurned a settlement offer for less than or equal to the policy amount. The insured's cause of action, however, did not arise under the original doctrine until he had actually paid part of the judgment in excess of the policy limits. Thus, cases applying the Stowers Doctrine, like *Smith v. Transmit Casualty Co., supra,* found it necessary to interpret the concept of "prepayment."

under the reasoning of *Cumis*, therefore, appellee has no standing as a third-party beneficiary.

Appellee also claims standing to enforce the insurance provisions by virtue of Bonanza's purported assignment to appellee of "any insurance proceeds." This assignment agreement, however, had no legal effect. The insurance contract contained an unambiguous no-assignment clause:

> No claim or demand against this Company under this policy shall be assigned or transferred, ...

Texas law permits the enforcement of no-assignment clauses in insurance policies. *Dallas County Hospital District v. Pioneer Casualty Co.*, 402 S.W.2d 287, 288 (Tex.Civ.App.—Fort Worth 1966, writ ref'd n.r.e.) (holding that, under Texas' assignment statute, parties may agree to and enforce no-assignment provisions). Therefore, the assignment was invalid, and appellee cannot rely on the assignment document to proceed directly against appellant.

Appellee argues in response that its rights as an assignee arise not because Bonanza assigned a "claim or demand," in contravention of the no-assignment clause, but here Bonanza assigned "proceeds"—a horse of a different color. The distinction is specious. An assignee stands in the boots of his assignor, and we have already held that Bonanza's boots do not entitle it to recover from appellant. Appellee cannot enlarge Bonanza's boots by putting the label "proceeds" on its claim. Words cannot change a plugged nickel into a silver dollar.

### Conclusion: The Final Episode?

We hold that Bonanza did not pay appellee within the contemplation of the indemnity provision, so appellant is not liable to appellee under the insurance contract. Further, we hold that appellee has no standing as a third-party beneficiary of the contract to maintain an action directly against appellant. Finally, we hold that the purported assignment of the insurance proceeds does not give appellee a direct right of action against appellant. The Aqua Safari was put out to pasture long ago. Hopefully, this series of cases will now follow. The judgment of the district court is

REVERSED AND JUDGMENT RENDERED FOR REPUBLIC INSURANCE.