836 F.2d 850
 TRAVELERS INDEMNITY COMPANY, Plaintiff-Appellee,
v.
CALVERT FIRE INSURANCE COMPANY, et al., Defendants-Appellants,
The London Steamship Owners' Mutual Insurance Association,
Ltd., Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
TA CHI NAVIGATION (PANAMA) CORPORATION, et al., Defendants,
Fenton Insurance Company, et al., Defendants-Appellants.
 No. 85-3019.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 19, 1988.
 
 Benjamin W. Yancey, M.D. Yager, New Orleans, La., for London S.S.
 Robert B. Deane, New Orleans, La., for Calvert, et al.
 Robert T. Lemo, II, Edward J. Koehl, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for Travelers.
 Allen Van Emmerick, J. Paul McGrath, Asst. Atty. Gen., Torts Branch, Civil Div., U.S. Dept. of Justice, Washington, D.C., for U.S.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before WILLIAMS, GARWOOD, and JONES, Circuit Judges.
 (ON PETITION FOR REHEARING)
 (Opinion August 29, 1986, 5 Cir., 1986, 798 F.2d 826)
 GARWOOD, Circuit Judge:
 
 
 1
 Appellant Calvert Fire Insurance Company, representing the hull underwriters (Hull Underwriters), and appellee the United States have filed motions for panel rehearing, complaining not of what we decided in our original opinion, Travelers Indemnity Co. v. Calvert Fire Insurance Co., 798 F.2d 826 (5th Cir.1986), but rather of what we failed to decide.
 
 
 2
 Our original opinion did not decide whether the United States was entitled to recover from Hull Underwriters the amount of its judgment against the owner of the EURYBATES, Ta Chi Navigation (Panama) Corporation (Ta Chi), for the damages to that vessel's cargo which the United States paid in settlement of the cargo owners' suit against the United States. The district court granted such recovery in favor of the United States and against Hull Underwriters on the theory that Hull Underwriters had breached its duty to its insured, Ta Chi, in the limitation proceeding (and proceedings consolidated with it) by not informing Ta Chi that its insurance policy did not cover claims for damage to the EURYBATES' cargo, by failing to appeal the judgment against Ta Chi in that proceeding and by representing Ta Chi when there was a conflict of interest between it and Hull Underwriters. The district court reasoned that the United States, as a judgment creditor of Ta Chi, was in effect subrogated to these claims by Ta Chi against Hull Underwriters. We pretermitted decision of those issues because we held that the United States was fully protected by its judgment against Travelers Indemnity Company (Travelers) on the latter's Rule F bond given in the limitation proceeding and that Travelers, in turn, was protected by its judgment against Hull Underwriters on Hull Underwriters' separate agreement (as we held was properly reformed by the district court) to fully indemnify Travelers. This conclusion was based on our understanding that Travelers' bond was sufficient to pay both the cargo claim and the claim for the damage to the other vessel in the collision, the United States' destroyer USS DAHLGREN. 798 F.2d at 831 n. 6. However, our understanding in this respect was erroneous, as the principal amount of Travelers' Rule F bond was $1,126,481, while the amount of the judgment for the United States and against Ta Chi in the limitation and consolidated proceedings totaled some $1,353,560, composed of approximately $750,353 collision damages to the DAHLGREN and about $603,207 awarded to the United States as equitable subrogee of the claims of the cargo owners, thus leaving a total of some $227,079 not covered by Travelers' Rule F bond.[1]
 
 
 3
 No one, of course, has contended that Travelers is liable for, or entitled to any indemnity respecting, more than the amount of its Rule F bond. Prior to the institution of the present suit, Hull Underwriters had already paid the United States, in partial satisfaction of its judgment against Ta Chi and of Travelers' liability on the Rule F bond, all or approximately all of the $750,353 of collision damages to the DAHLGREN. The only relief awarded the United States below in the present suit is judgment for $603,207 (plus interest thereon since April 30, 1980, when the cargo settlement in that amount was paid) against Hull Underwriters. It is thus still necessary to decide whether, as the district court ruled, the United States is entitled to recover from Hull Underwriters the $603,207 (plus interest) of the judgment awarded it against Ta Chi as equitable subrogee of the cargo, or at least so much thereof as is not covered by the amount remaining outstanding on Travelers' Rule F bond.
 
 
 4
 We hold the United States is not entitled to any such recovery from Hull Underwriters.
 
 
 5
 The United States advances two main arguments to support its recovery in this respect.[2]
 
 
 6
 First, it contends that since it settled the claims of cargo, these claims should be regarded as collision damages even though it was determined in the original suit that the DAHLGREN was wholly free from fault in the collision and was hence not liable to the cargo carried by the EURYBATES.
 
 
 7
 In cases of collision caused by the mutual fault of the two colliding vessels, the noncarrying vessel is fully liable to the cargo of the carrying vessel, and the amount of the noncarrying vessel's liability in this regard is an item of its collision damages includable in the total collision damages that are to be divided or apportioned (under United States v. Reliable Transfer Co., 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1973)) between the two at fault vessels, and this is true regardless of the fact that, by virtue of the Carriage of Goods by Sea Act (COGSA) or similar legislation, the carrying vessel would not be liable to its cargo. United States v. Atlantic Mutual Insurance Co., 343 U.S. 236, 72 S.Ct. 666, 96 L.Ed. 907 (1952); Aktieselskabet Cuzco v. The Sucarseco, 294 U.S. 394, 55 S.Ct. 467, 79 L.Ed. 942 (1935); The Chattahooche, 173 U.S. 540, 19 S.Ct. 491, 43 L.Ed. 801 (1899). In such instances, "the anomaly" of the carrying vessel in effect bearing a portion of its own cargo's damages notwithstanding its statutory immunity from cargo claims "is sharpened by the fact that, if it alone had been negligent, it would have paid nothing on account of its own cargo." G. Gilmore and C. Black, The Law of Admiralty 174 (2d ed. 1975) (emphasis in original). In cases where mutual fault has been found, the foregoing principles have been applied to instances where one of the vessels found at fault has settled the third-party claim. See Weyerhaeuser S.S. Co. v. United States, 372 U.S. 597, 83 S.Ct. 926, 10 L.Ed.2d 1 (1962); Ionian Glow Marine, Inc. v. United States, 670 F.2d 462 (4th Cir.1982). Here, however, in the original suit the district court found that the DAHLGREN was not at fault and that the collision was solely due to the fault of the EURYBATES. We need not determine whether as an initial matter such a determination should preclude recovery by the noncarrying vessel of the settlement amount in a case where, for example, the carrying vessel is entitled to a COGSA defense against its cargo. In the present suit, the United States asserts liability against Hull Underwriters solely on the basis of the judgment it procured against Ta Chi in the initial suit. In that case, however, it was specifically determined that the United States' settlement payment to cargo carried on the EURYBATES was not a part of the United States' collision damages, and that the United States was entitled to recover that amount from the EURYBATES and Ta Chi only in its capacity as equitable subrogee of the cargo claims against Ta Chi. 513 F.Supp. at 156-57. Cf. The Sucaresco, 55 S.Ct. at 471 (the right of a mutually at fault noncarrying vessel to bring into the to-be-apportioned collision damage total its liability to cargo "does not stand on subrogation"). Since the United States in the present case sues solely on the prior judgment, it cannot recover on a theory inconsistent with it. Nor was recovery on that theory allowed by the district court in the present case, the same judge who determined the prior suit.
 
 
 8
 Moreover, the question here is not the liability of Ta Chi, but of Hull Underwriters on its policy issued to Ta Chi. Relevant provisions of that policy prevent recovery thereon in these circumstances. The policy's "Collision Liability" clause provides in part that "if the Vessel shall come into collision with any other ship or vessel, and the Assured or the Surety in consequence of the Vessel being at fault shall become liable to pay and shall pay by way of damages to any other person or persons any sum or sums in respect of such collision, the Underwriters will pay the Assured or the Surety, whichever shall have paid, such proportion of such sum or sums so paid as their respective subscriptions hereto bear to the Agreed Value, provided always that this liability in respect to any one such collision shall not exceed their proportionate part of the Agreed Value." The concluding sentence of this clause states: "Provided always that this clause shall in no case extend to any sum which the Assured or the Surety may become liable to pay or shall pay in consequence of, or with respect to: ... (c) cargo or other property on or the engagements of the Vessel; ...." It will be noted that a condition of the insurer's obligation with respect to damages of others is that the insured "shall become liable to pay" same. As previously stated, this suit by the United States is founded on its prior judgment against Ta Chi only, and that judgment imposed liability on Ta Chi to the United States for the cargo loss not as collision damage but solely by way of subrogation to the cargo's claim against Ta Chi. Consequently, the concluding sentence of the "Collision Liability" clause, with its exception for liability "in consequence of, or with respect to ... cargo ... on ... the Vessel," clearly excludes any obligation of Hull Underwriters with respect to the cargo portion of the prior judgment against Ta Chi and in favor of the United States.
 
 
 9
 Further, the Hull Underwriter policy is an indemnity, not a liability, policy. This is evident from the phrases "and shall pay," "whichever shall have paid," and "such sum or sums so paid" in the above-quoted portion of the "Collision Liability" clause. As we stated in Conoco, Inc. v. Republic Insurance Co., 819 F.2d 120, 122 (5th Cir.1987) (quoting with approval from the panel opinion in Continental Oil Co. v. Bonanza Corp., 677 F.2d 455, 459 (5th Cir.1982)):
 
 
 10
 " 'In a liability contract, the insurer agrees to cover liability for damages. If the insured is liable, the insurance company must pay the damages. In an indemnity contract, by contrast, the insurer agrees to reimburse expenses to the insured that the insured is liable to pay and has paid.' " (Emphasis in original.)
 
 
 11
 Here, the cargo damage (or at least the portion thereof exceeding the sum which remained outstanding on the Rule F bond) has not been paid by or on behalf of Ta Chi (or otherwise). Consequently, Hull Underwriters is not obligated in respect thereto under its policy. Conoco, Inc. v. Republic Insurance Co., supra.[3]
 
 
 12
 Accordingly, we reject the United States' claim that it is entitled to recover from Hull Underwriters in respect to the cargo damage under the insuring clauses of the policy.
 
 
 13
 The United States' remaining basis for its assertion that Hull Underwriters is liable to it for what it paid in the cargo settlement is the same as that on which the district court found for the United States in this respect in the present suit, namely: that Hull Underwriters breached its fiduciary obligations to Ta Chi in connection with its defense of Ta Chi in the limitation proceeding and proceedings consolidated therewith (by not informing Ta Chi that its policy did not cover cargo claims, by furnishing Ta Chi representation when there was a conflict of interest between Hull Underwriters and Ta Chi, and by not appealing the prior judgment); that Ta Chi thus has a claim against Hull Underwriters in the amount of the unpaid portion of the United States' judgment against Ta Chi, namely, that portion representing the cargo damage; and that the United States, as judgment creditor of Ta Chi, is subrogated to that claim. It appears to us doubtful that Ta Chi has any valid claim in this respect.[4] Assuming, however, that it does, nevertheless this would not entitle the United States, merely by reason of its status as Ta Chi's judgment creditor, to recover thereon.[5] The vast majority of cases follows this rule. The annotation at 63 A.L.R.3d 677, et seq., states:
 
 
 14
 "In the absence of specific statutory or contractual language sanctioning a direct action, or an appropriate garnishment statute, the courts have denied the action on traditional common-law grounds, holding that absent privity there is no duty and absent damage there can be no recovery.
 
 
 15
 "Theories of recovery founded upon arguments that the judgment creditor is a third-party beneficiary to the insurance contract, or is subrogated to his debtor's claim against the carrier, have not succeeded. The Thompson Case, supra [Thompson v. Commercial Union Ins. Co., 250 So.2d 259 (Fla.1971) ], is the only case discussed herein where the judgment creditor was allowed to maintain an action in the absence of appropriate third-party beneficiary language in the insurance contract, or an appropriate direct action or garnishment statute." Id. at 682-83 (footnotes omitted).
 
 
 16
 This view was likewise endorsed by the Wisconsin Supreme Court in Kranzush v. Badger State Mutual Casualty, 103 Wisc.2d 56, 307 N.W.2d 256, 262-63 (1981), where it stated (albeit in dicta):
 
 
 17
 "[T]he overwhelming weight of authority holds that the excess judgment creditor has no action against the insurer. See, generally, Annot., 63 A.L.R.3d 677.... The reasons most often advanced for denying this right of action are that the duty to settle runs to the insured, not the claimant; that the excess judgment does not in fact injure the claimant; and that the claimant is a stranger to the contractual relationship between the insurer and the insured. Bean v. Allstate Ins. Co., 285 Md. 572, 403 A.2d 793, 794-95 (1979). See also: Page v. Allstate Ins. Co., 126 Ariz. 258, 614 P.2d 339 (1980); Winchell v. Aetna Life & Casualty Ins. Co., Ind.App. , 394 N.E.2d 1114 (1979)."
 
 
 18
 To the same effect are the following: Stockdale v. Jamison, 416 Mich. 217, 330 N.W.2d 389, 36 A.L.R. 4th 911, 913 (1982); Kennedy v. Kiss, 89 Ill.App.3d 890, 45 Ill.Dec. 273, 278, 412 N.E.2d 624, 629 (1980); Lisiewski v. Countrywide Ins. Co., 75 Mich.App. 631, 255 N.W.2d 714, 716-18 (1977); Bennett v. Slater, 154 Ind.App. 67, 289 N.E.2d 144, 63 A.L.R.3d 670 (1972) (reviewing authorities in other jurisdictions and declining to follow contrary rule of Thompson v. Commercial Union Ins. Co., 250 So.2d 259 (Fla.1971)); Bourget v. Government Employees Ins. Co., 456 F.2d 282, 287 (2d Cir.1972) (noting that in this respect "[t]he decisions have been practically unanimous"); Cook v. Superior Ins. Co., 476 S.W.2d 363 (Tex.Civ.App.--Beaumont 1972, writ ref'd n.r.e.) (denying garnishment by injured party-judgment creditor of insured); Pringle v. Robertson, 258 Or. 389, 394, 483 P.2d 814, 60 A.L.R.3d 1186 (1971) (same); Greer v. Mid-West National Fire & Casualty Ins. Co., 434 F.2d 215 (8th Cir.1970) (also holding that injured party-judgment creditor of insured could not force insured to bring action against insurer); Rowe v. United States Fidelity and Guaranty Co., 421 F.2d 937, 939-40 (4th Cir.1970); Nichols v. United States Fidelity and Guaranty Co., 318 F.Supp. 334 (S.D.Miss.1970); Steen v. Aetna Casualty and Surety Co., 157 Colo. 99, 401 P.2d 254 (1965) (denying garnishment by injured party-judgment creditor of insured); Dillingham v. Tri-State Ins. Co., 214 Tenn. 592, 381 S.W.2d 914 (1964); Chittick v. State Farm Mutual Automobile Ins. Co., 170 F.Supp. 276 (D.Del.1958). See also Dumas Brothers Manufacturing Co., Inc. v. Southern Guaranty Ins. Co., 431 So.2d 534 (Ala.1983) (not authorized by direct action statute). In part IV of the opinion in Seguros Tepeyac, S.A. Compania Mexicana v. Bostrom, 347 F.2d 168, 176-78 (5th Cir.1965), Judge Wisdom reviewed the law in this respect in some detail for this Court and reached the same conclusion.[6] The rationale for this position is essentially simple and compelling: the insurer's duty to defend and represent the insured with due care and appropriate fidelity cannot run to the injured party, and the injured party cannot complain of its breach, because a breach thereof can only help, not harm, the injured party.
 
 
 19
 Accordingly, we conclude that the district court erred in awarding the United States judgment against Hull Underwriters on the theory that the latter breached its defense duties to its insured Ta Chi, the judgment debtor of the United States.[7]
 
 
 20
 We therefore reverse the judgment in favor of the United States against Hull Underwriters.
 
 
 21
 The motions for rehearing are granted to the extent set out herein, and are otherwise denied.
 
 
 22
 In accordance with our prior opinion, the judgment against The London Club is reversed and the district court is directed to dismiss the suit against The London Club for want of jurisdiction over it. The judgment granting Travelers reformation of its indemnity agreement with Hull Underwriters (including reforming and declaring an estoppel respecting the Hull Underwriters insurance policy covering Ta Chi to the extent only that such policy is incorporated in or measures the obligation of Hull Underwriters under the indemnity agreement) is affirmed. The judgment in favor of the United States against Hull Underwriters is reversed. The cause is remanded for the entry of appropriate judgment consistent with this opinion and, except as modified hereby, with our prior opinion herein.
 
 
 23
 Judgment AFFIRMED in part and REVERSED in part; cause REMANDED.
 
 
 
 [1]
 These figures are from the parties' briefs on rehearing. We note that the partial satisfactions of judgment attached as exhibits to Hull Underwriters' brief reflect that the amount of the Rule F bond was $1,026,481, rather than $1,126,481. We do not purport to resolve this apparent discrepancy, or to speak with complete precision as to the damage awards. For our purposes, the only significant thing, which is clearly established, is that Travelers' Rule F bond was in an amount significantly lower than the total judgment in favor of the United States and against Ta Chi, although it well exceeded each of the two distinct components of that judgment (the collision damages and the cargo damages) considered separately
 We also take this occasion to state, more precisely than in our original opinion, 798 F.2d at 830 (carry-over paragraph), that the district court's ruling in the limitation proceeding that Ta Chi was liable to its cargo notwithstanding the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. Sec. 1304, was based on its determination that the collision and resulting cargo damage were caused by Ta Chi's want of due diligence to make the EURYBATES seaworthy and properly manned. Matter of Ta Chi Navigation (Panama) Corp., S.A., 513 F.Supp. 148, 157-61 (E.D.La.1981). We withdraw the statement in our prior opinion, 798 F.2d at 830, that "[a] prerequisite to any of the COGSA defenses is a showing that the ship was seaworthy." We also observe that in the mentioned proceeding the district court determined that Ta Chi was not entitled to limit its liability under 46 U.S.C. Sec. 183 because it, as owner of the EURYBATES, was found to have had privity and knowledge of, and participated in creating, that vessel's unseaworthy condition, which in turn caused the collision. 513 F.Supp. at 161.
 
 
 [2]
 The United States also argues that Hull Underwriters did not adequately preserve any complaints in respect to the judgment in favor of the United States against it. However, Hull Underwriters specifically appealed that judgment, and we conclude that Hull Underwriters' briefs in the consolidated cases are adequate, though barely so, to preserve its complaints in this respect
 
 
 [3]
 We observe that the Louisiana Direct Action Statute, LSA-R.S. 22:655, is inapplicable by its own terms because the Hull Underwriters policy was neither "issued or delivered in" nor "written or delivered in the State of Louisiana," and "the accident or injury" was not one which "occurred within the State of Louisiana." Neither the policy itself, nor Ta Chi, nor the EURYBATES, nor the collision had any connection with Louisiana or its territorial waters. Hull Underwriters was not a party to the prior suit(s)
 
 
 [4]
 It is questionable that there is sufficient evidence to support a finding (assuming one was made, which is itself unclear) of actual bad faith on the part of Hull Underwriters, and the validity under the evidence of even a negligence finding is open to some doubt. We note that Ta Chi was apparently covered respecting the cargo under the policy of The London Club which was in full force at the time of the collision (as the district court ruled), and was not canceled until many months thereafter. Counsel furnished by The London Club had represented Ta Chi in the cargo's suit against it in Puerto Rico, and Hull Underwriters did not learn of the retroactive cancellation of The London Club policy until shortly after the judgment in the limitation and consolidated proceedings. And, there is no finding, and perhaps no evidence, that the judgment in the limitation (and consolidated) proceeding would have been different if Hull Underwriters, or the counsel it furnished Ta Chi, had acted differently. See Employers National Ins. Corp. v. Zurich American Ins. Co. of Illinois, 792 F.2d 517, 520-21 (5th Cir.1986). Further, the record suggests that (and the district court made no finding respecting whether) Ta Chi is and was, prior to the trial of the limitation case, an essentially insolvent shell, as to which an "excess" judgment might be deemed harmless under one line of authority. See Harris v. Standard Accident and Ins. Co., 297 F.2d 627 (2d Cir.1961), cert. denied, 369 U.S. 843, 82 S.Ct. 875, 7 L.Ed.2d 847 (1962); Bourget v. Government Employees Ins. Co., 456 F.2d 282, 283-86 (2d Cir.1972); Stockdale v. Jamison, 416 Mich. 217, 330 N.W.2d 389, 36 A.L.R.4th 911, 916-18 (1982). Finally, as noted, the Hull Underwriters policy is an indemnity, not a liability, policy and Ta Chi has made no payment. While the "payment rule" has generally been abandoned in "excess" suits by an insured complaining of failure by the insurer to properly defend (or settle) under a liability policy, the courts so holding have frequently stressed the difference in this respect between liability and indemnity policies. See Smoot v. State Farm Mutual Automobile Ins. Co., 299 F.2d 525, 529 (5th Cir.1962); Hernandez v. Great American Ins. Co. of New York, 464 S.W.2d 91, 93 (Tex.1971). On the other hand, recovery in such cases is often on a tort theory, see, e.g., Hernandez, so the liability-indemnity distinction may well not be determinative
 
 
 [5]
 As we have observed, the Louisiana Direct Action Statute is inapplicable, and Hull Underwriters was not a party to the prior suit. See note 3, supra. The United States does not hold any assignment from Ta Chi. There has been no garnishment. Indeed, it appears that most garnishment statutes have been held inapplicable to such liability. See Annot., 60 A.L.R.3d 1190, et seq. See also, e.g., Cook v. Superior Ins. Co., 476 S.W.2d 363 (Tex.Civ.App.--Beaumont 1972, writ ref'd n.r.e.); Pringle v. Robertson, 258 Or. 389, 394, 483 P.2d 814, 60 A.L.R.3d 1186 (1971); Steen v. Aetna Casualty and Surety Co., 157 Colo. 99, 401 P.2d 254 (1965); Francis v. Newton, 75 Ga.App. 341, 43 S.E.2d 282 (1947). Nothing in the Hull Underwriters policy purports to grant such third-party rights
 
 
 [6]
 While Judge Brown concurred specially in Bostrom, criticizing the "payment" rule (which Texas later abandoned, see Hernandez v. Great American Ins. Co. of New York, 464 S.W.2d 91 (Tex.1971) (Reavley, J.)), he did not question part IV of Judge Wisdom's opinion, and agreed that the rights "of the damage claimant" were "nonexistent ones." 347 F.2d at 182
 
 
 [7]
 The United States also contends that it is subrogated to Travelers' rights against Hull Underwriters. We see no basis for such subrogation (there being no indication that Travelers will not or cannot make full payment to the United States under its Rule F bond), and clearly it would not in any event extend beyond the amount of the Rule F bond (for Travelers has no rights beyond indemnity thereon). The partial satisfactions of judgment executed by the United States have specifically reduced both the amount outstanding on its judgment against Ta Chi and the liability of Ta Chi as principal and Travelers as surety on the Rule F bond, and have also acknowledged that the payments (all or nearly all of the collision damage) were made by Hull Underwriters on the policy issued to Ta Chi
 We observe that the judgment below also granted Travelers reformation of the Hull Underwriters insurance policy so that it covered the cargo loss claim (and granted Travelers declaratory judgment that Hull Underwriters was estopped to deny such coverage). However, no such relief was granted the United States. Moreover, the grant of that relief to Travelers was obviously but a part and an effectuation of the reformation of the indemnity agreement between Hull Underwriters and Travelers, as the indemnity agreement had referenced Hull Underwriters' obligations under the insurance policy. We conclude that there is no basis for reforming (or declaring an estoppel with respect to) the insurance policy except only as it was incorporated into and made a part of the indemnity agreement between Hull Underwriters and Travelers, and if the judgment below reforms (or declares an estoppel respecting) the insurance policy for any other purpose or to any other extent, it is hereby modified accordingly.