OPINION OF THE COURT
Irving S. Aronin, J.
In this action to recover on a third-party judgment, defendant and plaintiff respectively move and cross-move for summary judgment.
The third-party judgment against the New York City Health and Hospitals Corporation (hereinafter Hospitals Corporation) was rendered in a personal injury action brought in the Supreme Court, Kings County, bearing the following caption:
“ALEXANDER Z. DUBICKI and ANNE DUBICKI,
Plaintiffs,
Index No. 18505/72
- against -
Cal. No. 33394
ROBERT F. MARESCO, CARLO MARESCO and DR. JOSEPH DASHEFSKY, Defendants.
*146 DR. JOSEPH DASHEFSKY,
Third Party Plaintiff,
- against -
NEW YORK CITY HEALTH & HOSPITALS CORPORATION,
Third Party Defendant.”
Following a trial of that action, the jury awarded a verdict in favor of the Dubickis against the main defendants therein, the Marescos and Dr. Dashefsky, in the total principal sum of $835,000 plus interest. The jury then proceeded to apportion this amount amongst and between those defendants and the third-party defendant, Hospitals Corporation. Upon appeal, the Appellate Division, Second Department, upheld the $835,000 verdict but modified the jury’s apportionment of damages (see Dubicki v Maresco, 64 AD2d 645). An amended judgment was thereupon entered in the Kings County Clerk’s office on September 21, 1978. As reflected in this amended judgment, the net effect of the jury’s verdict and the Appellate Division’s modification thereof was to apportion culpability and liability of the parties in the following manner:
(1) The Marescos were found to be 10% culpable, Dr. Dashefsky 36% and Hospitals Corporation 54% negligent.
(2) Even though bearing only 10% of the fault, the Marescos, as the initial tort-feasors, were primarily liable to the Dubickis for the entire amount of $835,000.
(3) Dr. Dashefsky also shared in the primary liability to the Dubickis to the extent of his 36% share of $835,000, or $300,600. If Dr. Dashefsky were to pay this amount to the Dubickis, as was done in this case, then the Marescos’ primary liability would be and was reduced to 64% of the entire judgment, or $534,400.
(4) The Hospitals Corporation was not directly liable to the Dubickis but, on a contribution-apportionment basis, was liable only to the Marescos (by virtue of the Marescos’ cross claim against it) for 54% of the total judgment, or $450,900. The Hospitals Corporation’s liability was conditional, however, in accordance with the following language *147 from the amended judgment: “ADJUDGED, that defendants ROBERT F. MARESCO and CARLO MARESCO *** shall have judgment against the NEW YORK CITY HEALTH & HOSPITALS CORPORATION *** in the amount of $491,472.38 [this amount represents $450,900 principal sum plus interest accrued to date of said judgment] but that no part of said judgment shall be payable and become due unless and until ROBERT MARESCO and CARLO MARESCO pay to the plaintiffs an amount in excess of $91,013.40 [this amount represents $83,500 principal sum plus interest accrued to date of said judgment] and to the extent that ROBERT MARESCO and CARLO MARESCO have judgment over, the amount of said judgment over shall be the amount by which they have paid to the plaintiffs in excess of the amounts heretofore set forth”. (Emphasis supplied.)
Thus, under the amended judgment, the Hospitals Corporation is under no obligation to pay the Marescos any portion of its liability of $450,900 unless and until the Marescos first pay the Dubickis an amount in excess of their 10% liability of $83,500, and then the Hospitals Corporation is only liable on a dollar-for-dollar basis for that amount so paid by the Marescos that exceeds this 10%. This conditional nature of the third-party defendant Hospitals Corporation’s liability to the main defendants, the Marescos, is mandated by the Court of Appeals decision in Klinger v Dudley (41 NY2d 362).
Following the entry of the amended judgment on September 21, 1978 and up until September 21, 1979, the Dubickis had received on their judgment, the principal sum of $300,600 from Dr. Dashefsky, thereby satisfying his 36% liability. The Dubickis also received a part, payment from the Marescos of $25,000, which was the limit of their liability insurance coverage. The Marescos still owed to the Dubickis a balance of $509,400. Apparently, the Marescos were not able to make any further payments on this unpaid judgment and, of course, under the principles of Klinger v Dudley (supra) as reinforced by the conditional language in the amended judgment, the Dubickis could not recover directly from the Hospitals Corporation, nor was the Hospitals Corporation yet required to contribute its share to the Marescos.
*148 To resolve this impasse and enable the Dubickis to further collect on the judgment, Dubickis’ counsel, acting on their behalf on the basis of a course of action suggested in the Syracuse Law Review (Farrell, Civil Practice, 29 Syracuse L Rev 449, 488-489), entered into an arrangement with the Marescos and Robert Feldman, the plaintiff herein. Under this arrangement, the following simultaneous transactions and transfer of documents were effectuated on September 21, 1979:
(1) Robert Feldman loaned $546,202 to the Marescos in the form of a cashier’s check made payable to Robert Feldman and then indorsed over to the Marescos. The Marescos deposited this check in their account at the same bank upon which the check was drawn.
(2) Using the money so deposited in their account, the Marescos wrote and delivered a check payable to the Dubickis and their counsel in the same amount of $546,202. This sum represented the unpaid principal balance of $509,400 due plus interest. This check was deposited and the $546,202 proceeds are being held in a bank escrow account maintained by Dubickis’ counsel.
(3) The Dubickis executed and gave to the Marescos a general release and a full satisfaction of the judgment against the Marescos. This satisfaction is unconditional and the Dubickis can have no further claim against the Marescos irrespective of the outcome of the instant lawsuit.
(4) By separate written assignments, the Marescos assigned to Robert Feldman the afore-mentioned satisfaction of judgment and all of the interest of the Marescos in their right of contribution from the Hospitals Corporation under the amended judgment.
(5) The Marescos gave a demand promissory note for $546,202 to Robert Feldman with interest at the rate of 10% per annum. This note was accompanied by a guarantee of payment by the Dubickis to induce Robert Feldman to accept the note from the Marescos. Under the guarantee, Feldman can collect on the note directly from the Dubickis without first having to proceed against the Marescos.
*149 (6) Robert Feldman and the Marescos entered into a separate written agreement providing in part that if the Hospitals Corporation pays Robert Feldman any amount under Feldman’s right, as assignee, to contribution from the Hospitals Corporation, then the Marescos shall be fully discharged from any obligation to repay the Feldman loan.
(7) The Dubickis, the Marescos and Robert Feldman entered into a separate written agreement which enumerates all of the above transactions and which further provides that 75% of any recovery obtained by Feldman from the Hospitals Corporation shall be paid to the Dubickis with the other 25% to be retained by Feldman.
It was the expectation of the Dubickis’ counsel that Feldman’s loan and the concommitant full payment by the Marescos on their judgment would satisfy the condition precedent to the Hospitals Corporation’s liability of $450,900, thus entitling the Marescos’ assignee, Robert Feldman, to contribution from the Hospitals Corporation in this amount.
After these transactions were consummated, Robert Feldman sought payment from the Hospitals Corporation, was refused and thereupon brought the instant action to recover this amount.
In answer to the complaint herein, the defendant asserts three affirmative defenses. In essence, these defenses attack the arrangement hereinbefore set forth as unlawful and in violation of public policy and describe it as a “collusive scheme” in order “to circumvent the condition precedent of the amended judgment” to defendant’s liability for payment thereunder. In addition, the defendant’s answer asserts that the Marescos have not in fact satisfied the requisite condition precedent in that their payment to the Dubickis has not been unconditionally received by the Dubickis.
The court must now decide whether the arrangement herein described is unlawful, or constitutes a collusive scheme to circumvent or is otherwise violative of the Court of Appeals decision in Klinger v Dudley (41 NY2d 362, supra).
*150 To examine the arrangement in its proper perspective, some observations about the Klinger case must first be made. Klinger represents a literal interpretation and enforcement of the contribution statute, CPLR 1402. In adopting this posture, the court created a situation which can and does produce inequitable results for the parties involved. The opinion acknowledges this possible unfairness, at least as far as the plaintiff is concerned (supra, pp 370-371), since plaintiff’s judgment may be rendered uncollectible even though there is a culpable third-party defendant with funds to satisfy its apportioned share of the judgment.
However, this result is justified in the Klinger opinion (supra, pp 367-368) on the ground that there is no direct liability flowing from a third-party defendant to the plaintiff absent the plaintiff’s having asserted a claim against such party or having in the first instance electéd to sue this tort-feasor as á main defendant. Such failure results in plaintiff’s losing his opportunity to make any direct recovery from the third-party defendant (supra, p 368).
In a sense then, Klinger v Dudley (41 NY2d 362, supra) penalizes the plaintiff not because of the plaintiff’s fault but because of his attorney’s failure to properly proceed against the third-party defendant. There are situations though, as the Klinger court recognized in discussing the companion case of Valentino v Thompson (41 NY2d 362) where neither the plaintiff nor his counsel can be blamed for not suing the third-party defendant. This can occur, as in the Valentino case (supra, pp 368-370), where an employee is barred under the Workers’ Compensation Law from asserting a claim against his employer even though the employer has been impleaded as a third-party defendant and apportioned part of the liability. Even in such nonfault situations, the Court of Appeals adheres to the Klinger principle and accepts plaintiff’s limited recovery as “the workings of fate” (Valentino v Thompson, supra, p 370). While noting that (supra, p 371) “[t]o some, this result may seem unfair”, the court said that (supra, p 370) “[t]o permit a further recovery to these plaintiffs by means of allowing the respective main defendants to recover from third-party defendants amounts such main defendants had *151 not yet paid would be, in effect, the casting aside of established principles codified in the pleading statutes (see CPLR 1402 [citations omitted])”.
What remains unsaid in the opinion is the underlying purpose behind these “established principles” which require that payment first be made by the main defendant. A claim for contribution via apportionment is, in reality, a claim for partial indemnification of the third-party defendant reimbursing the defendant for the farmer’s share of the total assessed liability (Zillman v Meadowbrook Hosp. Co., 73 Misc 2d 726, 729-730, revd on other grounds 45 AD2d 267). This apportionment-partial indemnification concept is based upon the theory of avoiding the unjust enrichment of one (the third-party defendant) whose obligation has been paid at the expense of another (the main defendant) (Adams v Lindsay, 77 Misc 2d 824, 827). CPLR 1402, as reinforced by Klinger v Dudley (41 NY2d 362, supra), insures that the third-party defendant’s contribution accomplishes that very purpose as it prevents the main defendant from simply keeping the contribution without ever paying the plaintiff.
Interestingly, by this operation of Klinger v Dudley (supra), the main defendant who cannot satisfy the judgment is also adversely affected for he must pay not only his own proportionate share of the damages but also that for which the third-party defendant has been responsible. The main defendant, regardless of his assets could thus remain subject to continuing income and/or property executions or other enforcement devices to pay off this additional liability. While the defendant’s initial negligence may be said to have caused the resulting consequences, it is the plaintiff by his failure to sue the third-party defendant who under Klinger is responsible for enlarging the defendant’s liability.
The third-party defendant is quite obviously the beneficiary, whether intended or not, of the Klinger principle. Irrespective of its degree of fault and the jury’s finding of culpability and liability, and notwithstanding its ability to pay, this tort-feasor may escape without having to pay a single dollar of the judgment against it.
*152 In the light of these consequences, is there anything an affected plaintiff can do to overcome the impact of Klinger v Dudley (supra)! Must he simply sit idly by with a large uncollectible judgment without recourse to anyone except perhaps his attorney for possible legal malpractice in failing to sue or assert a claim against the third-party defendant? The Klinger opinion is silent as to the plaintiff’s options, and apparently no other reported decision since Klinger has considered this problem. Consequently, this court is confronted with a case of first impression as to the validity of the type of arrangement employed here.
The Dubickis had found themselves the victims of a Klinger “catch-22” situation. They had an outstanding judgment in the amount of $509,400 against the Marescos. The Marescos could not pay any part of this judgment nor could the Dubickis look to the Hospitals Corporation for payment even though the jury had said that this third-party defendant was liable for $450,900 thereof. Only the Marescos could exact payment from the Hospitals Corporation, but they could not do so since they could not first pay the Dubickis the apportioned share of the Hospitals Corporation.
To overcome this situation and obtain payment by the only culpable party with available funds, the afore-stated condition precedent to the Hospitals Corporation’s liability had to be satisfied. By themselves, the Dubickis could not accomplish this for it required a payment to them by the Marescos. Yet the Marescos apparently had no assets, or insufficient assets, from which to make any such payment and it is unreasonable to expect that the Marescos alone could, or would go to a bank, or other source of funds and borrow over $500,000. The only realistic course was for the Dubickis and the Marescos to join up and take concerted action mutually beneficial to each side. This is precisely what the parties did here with Dubickis’ counsel bringing in the necessary third party, Robert Feldman.
Feldman provided the requisite financing in the form of a bona fide loan to the Marescos in the amount which represented the full unpaid principal sum of $509,400 plus interest. The Marescos then turned around and used these proceeds to make full payment on the judgment to the *153 Dubickis. The Marescos received in exchange a complete satisfaction of judgment which is valid regardless of the outcome of this action. Thus, as far as the Dubickis and the Marescos are concerned, the Marescos have made full payment and fulfilled their obligation under the amended judgment of September 21, 1978.
True, the Marescos have incurred no out-of-pocket expenditures in doing so but that should not detract from the bona fides of the payment that was in fact made to the Dubickis. Klinger v Dudley (41 NY2d 362, supra) only requires that payment come from the defendant (i.e., the Marescos). It does not restrict the source of funds from which to make this payment.
What the Dubickis then do with the payment is also irrelevant and is of no concern to the Marescos. Counsel’s retention of the proceeds from the payment in an escrow account is necessary to make the Dubickis guarantee of repayment of the Feldman loan a meaningful one. Since no other court has passed upon this type of arrangement, there was no assurance that it would receive judicial approbation. Robert Feldman, therefore, needed and was entitled to receive from Dubickis’ counsel, who induced Feldman to make the loan, a guarantee that the Dubickis would and could repay the loan if the arrangement is not approved by the courts.
In sum, this court finds that the Hospitals Corporation has not sufficiently demonstrated that the arrangement employed herein is illegal or improper, or that it constitutes a collusive scheme to circumvent Klinger v Dudley (supra). On the contrary, the results sought to be accomplished here are equitable and are consistent with the Klinger principles and their underlying salutary purpose, as earlier noted. If anything, the Hospitals Corporation is attempting to circumvent its own liability of $450,900 plus interest by characterizing the Marescos’ payment to the Dubickis as a sham. This court will not permit the “shield” of Klinger to be used as a “sword” by a culpable third-party defendant who seeks to escape a judgment against it through an inflexible construction of Klinger.
*154 Consequently, the court holds that the simultaneous transactions of September 21, 1979, between and amongst the Dubickis, the Marescos, and Robert Feldman are valid and proper; the Marescos’ payment of $546,202 to the Dubickis is bona fide, thus satisfying the condition precedent to the Hospitals Corporation’s liability in the amended judgment of September 21, 1978; said liability is now payable and due to the extent of $450,000 (the amount sought in the complaint) plus interest; and the plaintiff herein, as assignee of the Marescos’ third-party judgment against the Hospitals Corporation, is entitled to recover same in this action.
Accordingly, the plaintiff’s cross motion is granted and the defendant’s motion for summary judgment is denied.