ROBERT FELDMAN, Respondent, v NEW YORK CITY HEALTH & HOSPITALS CORPORATION, Appellant.

Second Department, December 31, 1981

APPEARANCES OF COUNSEL

*Allen G. Schwartz, Corporation Counsel* (*Milton Weinberg* and *Stephen M. Clayton* of counsel), for appellant.

*Siff & Newman, P. C.* (*Thomas R. Newman* and *Louis G. Adolfsen* of counsel), for respondent.

OPINION OF THE COURT

RABIN, J.

In *Klinger v Dudley* (41 NY2d 362), the Court of Appeals held that where a defendant has not paid his equitable share of a judgment, neither he, nor the plaintiff, is entitled to obtain contribution from a tort-feasor who was not sued directly by the plaintiff. In the instant case, we are called upon to determine whether a series of transactions among a plaintiff, a defendant and a defendant's assignee,

amounts to a "payment" under *Klinger,* which would entitle the assignee to contribution from a culpable third party.

The pertinent facts may be summarized as follows: Alexander Dubicki was injured as a result of the negligent operation of a car owned by Carlo Maresco and driven by Robert Maresco. His condition was aggravated by the malpractice of Elmhurst General Hospital (owned and maintained by the New York City Health and Hospitals Corporation [NYCHHC, defendant herein]), where he was treated following the accident. After his release from Elmhurst, Dubicki's condition was further aggravated by the malpractice of Dr. Joseph Dashefsky, a private physician. Dubicki and his wife, Anne, who asserted loss of consortium, sued the Marescos and Dashefsky; the Marescos impleaded NYCHHC, seeking contribution. Subsequently, the Dubickis recovered a judgment in the principal amount of $835,000 against the Marescos and Dashefsky. NYCHHC was adjudged liable to the Marescos on the third-party claim.

After a modification of the judgment by this court (*Dubicki v Maresco,* 64 AD2d 645), the liabilities of the defendants and third-party defendant were determined as follows: 10% ($83,500) against the Marescos, 36% ($300,600) against Dr. Dashefsky, and 54% ($450,000) against NYCHHC. The Marescos, as initial tort-feasors, were liable to the Dubickis for the entire judgment. Dr. Dashefsky, as a successive and subsequent tort-feasor, was liable only for that portion of the Dubickis' injury (36%) which was attributable to his own conduct. NYCHHC, which was not named as a defendant in the principal action, was not liable at all to the Dubickis, but was prospectively liable to the Marescos, pursuant to *Klinger v Dudley* (41 NY2d 362, *supra*), and the following provision of the amended judgment: "ADJUDGED, that defendants ROBERT F. MARESCO and CARLO MARESCO * * * shall have judgment against the NEW YORK CITY HEALTH & HOSPITALS CORPORATION * * * in the amount of $491,472.38 but that no part of said judgment shall be payable and become due unless and until ROBERT MARESCO and CARLO MARESCO pay to the plaintiffs an amount in excess of $91,013.40 [$83,500 plus interest] and to the extent that ROBERT MARESCO and CARLO MARESCO

have judgment over, the amount of said judgment over shall be the amount by which they have paid to the plaintiffs in excess of the amounts heretofore set forth".

After the judgment was amended, Dr. Dashefsky satisfied his entire liability. The Marescos, however, were only able to pay $25,000, the limit of their insurance coverage, plus interest. The Dubickis thus found themselves unable to collect the remaining $509,400, plus interest, which was owed to them under the judgment. The Marescos lacked the assets to satisfy even their equitable share of the liability ($83,500, plus interest). Pursuant to the terms of the amended judgment and the Court of Appeals holding in *Klinger v Dudley* (*supra*), the Dubickis had no recourse against the NYCHHC, which was not a defendant in the principal action.

Confronted with this problem, the Dubickis' attorney devised a plan which, he hoped, would permit his clients to circumvent the rule of *Klinger v Dudley* and recover, indirectly, from the third party. In order to effect the plan, which was modeled on an arrangement described in a law review article (Farrell, Civil Practice, 29 Syracuse L Rev 449, 488-489), the Dubickis' attorney contacted an old acquaintance, Robert Feldman (the plaintiff herein), who agreed to act as lender. Feldman, the Dubickis, and the Marescos, then entered into a series of transactions which were designed to permit the Dubickis to recover indirectly from NYCHHC. The transactions are accurately described in Special Term's opinion (*Feldman v New York City Health & Hosps. Corp.*, 107 Misc 2d 145, 148-149):

"(1) Robert Feldman loaned $546,202 to the Marescos in the form of a cashier's check made payable to Robert Feldman and then indorsed over to the Marescos. The Marescos deposited this check in their account at the same bank upon which the check was drawn.

"(2) Using the money so deposited in their account, the Marescos wrote and delivered a check payable to the Dubickis and their counsel in the same amount of $546,202. This sum represented the unpaid principal balance of $509,400 due plus interest. This check was deposited and the $546,202 proceeds are being held in a bank escrow account maintained by Dubickis' counsel.

"(3) The Dubickis executed and gave to the Marescos a general release and a full satisfaction of the judgment against the Marescos. This satisfaction is unconditional and the Dubickis can have no further claim against the Marescos irrespective of the outcome of the instant lawsuit.

"(4) By separate written assignments, the Marescos assigned to Robert Feldman the afore-mentioned satisfaction of judgment and all of the interest of the Marescos in their right of contribution from the Hospitals Corporation under the amended judgment.

"(5) The Marescos gave a demand promissory note for $546,202 to Robert Feldman with interest at the rate of 10% per annum. This note was accompanied by a guarantee of payment by the Dubickis to induce Robert Feldman to accept the note from the Marescos. Under the guarantee, Feldman can collect on the note directly from the Dubickis without first having to proceed against the Marescos.

"(6) Robert Feldman and the Marescos entered into a separate written agreement providing in part that if the Hospitals Corporation pays Robert Feldman any amount under Feldman's right, as assignee, to contribution from the Hospitals Corporation, then the Marescos shall be fully discharged from any obligation to repay the Feldman loan.

"(7) The Dubickis, the Marescos and Robert Feldman entered into a separate written agreement which enumerates all of the above transactions and which further provides that 75% of any recovery obtained by Feldman from the Hospitals Corporation shall be paid to the Dubickis with the other 25% to be retained by Feldman."

It should be noted that no written escrow agreement was entered into between the parties. Nonetheless, as Feldman conceded, the money was advanced with the understanding that it would be held in escrow by the Dubickis' attorney pending determination of the lawsuit against NYCHHC. Since Feldman knew the escrowee (the Dubickis' attorney) personally, and was aware of his professional reputation, he considered this arrangement to be "adequate protection" for his loan. The escrow funds were to be used to repay Feldman in the event the lawsuit proved unsuccess-

ful, or if Feldman, for whatever reason, demanded repayment before the suit was resolved.

After the transactions were completed, Feldman commenced the instant action, seeking as defendants' assignee, to obtain contribution from NYCHHC. Special Term (ARONIN, J.), concluding that Feldman was entitled to contribution, denied the motion for summary judgment made by NYCHHC, and granted Feldman's cross motion for summary judgment (107 Misc 2d 145, *supra*). The instant appeal ensued.

In order to resolve the legal issue framed by this appeal, it is necessary to consider the holding and reasoning of the *Klinger* opinion. In *Klinger* (41 NY2d 362, *supra*), the plaintiffs successfully sued one tort-feasor, Leone, who, in turn, prevailed in his claims for contribution against the Dudleys and the Smiths, who had been partly responsible for the plaintiffs' injuries. The plaintiffs, however, had not obtained judgments against either the Dudleys or the Smiths; their claim against the Dudleys had been dismissed as a result of their failure to serve a bill of particulars, and the Smiths had not been named as defendants in the principal action. While the plaintiffs received a small portion of their judgment from Leone's liability insurance carrier, much less than Leone's equitable share, most of the judgment remained unsatisfied. In the companion case of *Valentino v Thompson* (41 NY2d 362), the plaintiffs had obtained a judgment against two defendants, but their suit against the third-party defendants was barred by the Workmen's (now Workers') Compensation Law. As in *Klinger,* the bulk of the plaintiffs' judgment proved uncollectible.

The Court of Appeals held that neither the plaintiffs, nor the successfully sued defendants, were entitled to contribution from the third-party defendants, since the defendants had not paid their share of the judgment. In reaching this result, the Court of Appeals noted that while the defendants could *claim* contribution prior to payment of any amount to the plaintiffs, they were not *entitled* to contribution until they paid in excess of their proportionate share of the judgment.

The *Klinger* holding is consistent with the modern law of contribution as expounded in *Dole v Dow Chem. Co.* (30 NY2d 143), and codified in the revised article 14 of the CPLR. *Dole* was intended to provide for an equitable determination of the rights of joint tort-feasors: one tort-feasor should not be unjustly enriched at the expense of another, who has paid more than his proportionate share of the judgment (see *Adams v Lindsay,* 77 Misc 2d 824; CPLR 1402). But *Dole* neither expanded nor restricted the rights of plaintiffs. As before *Dole,* a plaintiff can recover the full amount of any uncompensated damage he has suffered from any joint tort-feasor against whom a judgment has been obtained (*Kelly v Long Is. Light Co.,* 31 NY2d 25). By the same token, a plaintiff has no rights against a tort-feasor whom he has not successfully sued.

The requirement that a plaintiff obtain a judgment against a party from whom recovery is sought may produce results which appear anomalous in cases involving third-party practice. As in *Klinger,* it is possible for a party to be adjudicated a tort-feasor in a third-party claim, but be free of all liability vis-à-vis the plaintiff whom he has injured. But such a result, while seemingly unjust, is clearly mandated. The third-party defendant's freedom from liability may be due to a statutory bar to recovery (such as the Workers' Compensation Law) or to the failure of a plaintiff, or his attorney, to properly commence or prosecute an action against a tort-feasor. Whatever the reason, however, the courts may not enforce a judgment which has not been obtained. To permit a recovery from a third-party defendant who has not been sued "would be, in effect, the casting aside of established principles codified in the pleading statutes" (*Klinger v Dudley,* 41 NY2d 362, 370, *supra*).

In the case at bar, the Dubickis find themselves in precisely the same situation as the plaintiffs in *Klinger.* They have prevailed against a party who cannot satisfy his portion of the judgment, but failed to sue another (NYCHHC) whose solvency is apparent. Plaintiff Feldman would distinguish *Klinger,* however, contending that, as assignee of the Marescos, he is entitled to contribution, since the Marescos' portion of the judgment has been fully paid.

Justice ARONIN, who considered the transactions in a detailed and thoughtful opinion, found plaintiff Feldman's contention to be meritorious. He recognized that the loan and collateral agreements were designed to overcome the *Klinger* bar to recovery by the Dubickis. Nonetheless, he determined that a bona fide payment had been made to the Dubickis, which entitled Feldman to contribution from NYCHHC. Underlying Justice ARONIN's conclusion was his belief that *Klinger* represented a literal interpretation of the contribution statute which unfairly benefited the third-party defendant at the expense of both plaintiff and defendant third-party plaintiff. Consequently, he was willing to approve a rather transparent attempt to overcome *Klinger,* and permit the Dubickis to recover, indirectly, from NYCHHC.

We find ourselves unable to agree with Justice ARONIN's analysis. For reasons discussed earlier, we believe that *Klinger* was not just a literal interpretation of the contribution statute, but one which follows, necessarily, from principles of pleading and practice. The requirement of payment in "excess [of a defendant's] * * * equitable share" (CPLR 1402) is more than a formal condition precedent to recovery in contribution. Unless a defendant has actually paid an excessive portion of the judgment, the tort-feasor from whom contribution is sought has not been justly enriched at his expense, and the equitable considerations which underlie the *Dole* rule do not apply. In such circumstances, the third-party defendant has no lawful obligation to the defendant; he certainly has no obligation toward a plaintiff who has not sued him.

Because the question of actual payment is of crucial importance, the courts must look to the substance, and not just the form, of a transaction in determining whether, in fact, a payment has been made. The fact that a judgment debtor has received a satisfaction of judgment is not determinative. A debtor can be considered to have paid a creditor only if he has delivered, and the creditor has received, money, or other valuable thing, in the amount of the debt (see *Persons v Gardner,* 122 App Div 167).

Viewed in this light, it is apparent that the loan was not a payment to the Dubickis. The funds which are said to

constitute payment were advanced by Feldman, held nominally (and fleetingly) by the Marescos, and transferred to the Dubickis by check. But the funds have not been received by the Dubickis in any meaningful sense. The Dubickis can make no use of the money since it is being held in escrow by their attorney, and must be repaid to Feldman on demand, in accordance with the promissory note. The only bona fide payment made by the Marescos was the $25,000, plus interest, tendered by their insurer.

The Marescos, for their part, parted with nothing of value in this series of transactions. Indeed, they are in a better position now than they were before the agreements. They have received a full and unconditional satisfaction of judgment from the Dubickis. While they are theoretically obligated to repay the note — it is clear that Feldman will look to the escrow fund for actual repayment — even this liability would be discharged were Feldman to receive any payment from NYCHHC.

This illusory series of transactions cannot serve to bind NYCHHC. NYCHHC is without obligation to the Dubickis, who commenced no action against it. It is equally without obligation to the Marescos (who, in reality, have paid far less than their equitable share of the judgment) or to their assignee.

Our decision is limited to the facts of the case before us. We have no occasion to determine whether some arrangement among a plaintiff, defendant third-party plaintiff, and an outside lender might constitute a bona fide payment which would entitle the defendant to payment under *Klinger* (*supra*). Certainly, we do not wish to intimate that a defendant cannot use some outside source of funds to satisfy a judgment to the plaintiff. The fatal flaw of the instant scheme was not that the funds came from a lender, but that they were never really given to the Dubickis.

The order appealed from should be reversed, Feldman's cross motion for summary judgment denied, and NYCHHC's motion for summary judgment granted.

HOPKINS, J. P., DAMIANI and TITONE, JJ., concur.

Order of the Supreme Court, Kings County, dated Feb-

ruary 24, 1981, reversed, on the law, with $50 costs and disbursements, motion granted and cross motion denied.