05-5925-bk
Asbestosis v. American Steamship

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term 2007

(Argued: October 29, 2007                    Decided: June 19, 2008)

Docket No.  05-5925-bk

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

In Re: Prudential Lines Inc.,
Debtor.

ASBESTOSIS CLAIMANTS,
                              *Claimants-Appellants*,

v.

AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC.,
                              *Appellee.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before: MINER, LEVAL, POOLER, *Circuit Judges*.

Appeal by holders of claims against the bankruptcy estate of a shipping line from the affirmance by the United States District Court for the Southern District of New York (Buchwald, *J.*), *In re Prudential Lines*, No. 05 Civ. 2810, 2005 U.S. Dist. LEXIS 20657 (S.D.N.Y. Sept. 21, 2005), of the denial by the United States Bankruptcy Court for the Southern District of New York (Gonzalez, *J.*), *In re Prudential Lines*, No. 86-B-11773 (AJG) (Bankr. S.D.N.Y. Jan. 19, 2005), of a motion by the trustee and the claimants for approval of aspects of a proposed structure to pay claims and receive insurer's indemnity thereon, as against the insurer's contention that the proposed

structure violates the pay-first requirement of the indemnity policies.  Reversed and remanded.

SANFORD F. YOUNG, Law offices of Sanford F. Young, New York, New York (Alan Kellman, The Maritime Asbestosis Legal Clinic, a Division of the Jacques Admiralty Law Firm, P.C., *on the brief*), *for Appellants*.

LAWRENCE J. BOWLES, Nourse & Bowles, LLP, New York, New York, *for Appellee*.

LEVAL, *Circuit Judge*:

This is an appeal by numerous individual creditors (the "Claimants") of Prudential Lines, Inc. ("Prudential") from a ruling of the United States District Court for the Southern District of New York (Buchwald, *J.*), which affirmed the United States Bankruptcy Court for the Southern District of New York (Gonzalez, *J.*) in denying a motion jointly made by Claimants and Prudential's Trustee in bankruptcy (the "Trustee") against Prudential's liability insurer, the American Steamship Owners Mutual Protection and Indemnity Association (the "Insurer").  The motion sought two orders enabling the Trustee to undertake a proposed structure for the use of insurance indemnities to pay the claims of the Claimants (the "Proposed Payment Structure").  The motion primarily asked the bankruptcy court (1) to reject the objections of the Insurer to the Proposed Payment Structure and (2) to direct that setoffs to which the Insurer was entitled by virtue of unpaid premiums on four years of coverage be prorated among the claims.

The Proposed Payment Structure was to involve a series of transactions whereby the Trustee would make a payment of a Claimant's claim and then submit the payment to the Insurer for indemnification.  The Trustee would use the proceeds of the indemnity payment to pay further claims, then seek further indemnification, and repeat the process until all claims were paid.  The

Insurer, which is the appellee in this proceeding, successfully opposed Claimants' motion in the bankruptcy court and on appeal to the district court. At issue in the two rulings sought was whether the Proposed Payment Structure violates (i) the terms of Prudential's indemnity policy with the Insurer; (ii) the Bankruptcy Plan, which was approved in 1990; or (iii) the terms of the Insurer's right of setoff relating to unpaid premiums (the "Unpaid Premiums") for certain calendar years of Prudential's coverage by the Insurer. We find that the reasons for which the bankruptcy and district courts rejected the Proposed Payment Structure are not valid. Accordingly, we reverse and remand.

## BACKGROUND[1]

Prudential, a shipping line, went bankrupt in 1986. The Claimants in this proceeding are many thousands of its former employees, perhaps as many as 10,000, who suffered illness or injury in the course of their employment, particularly through exposure to asbestos. The total of the Claimants' valid claims might amount to tens of millions of dollars.

For forty-one years (almost entirely continuous), Prudential was covered by liability insurance issued by the Insurer. *See Prudential II*, 170 B.R. at 226. The policies, each covering one year, were structured as indemnities, meaning that liability claims against Prudential could not be submitted directly to the Insurer, but were required to be paid first by Prudential, which may then submit to the Insurer for reimbursement (minus a deductible). *Prudential IV*, 158 F.3d at 68.

Upon its bankruptcy, Prudential did not have sufficient funds to pay the aggregate valid

---

[1] This case has a long history in the courts of this circuit. *See In re Prudential Lines, Inc.*, 148 B.R. 730 (Bankr. S.D.N.Y. 1992) ("*Prudential I* "); *In re Prudential Lines, Inc.*, 170 B.R. 222 (S.D.N.Y. 1994) ("*Prudential II* "); *In re Prudential Lines, Inc.*, 202 B.R. 13 (Bankr. S.D.N.Y. 1996) ("*Prudential III* "); *In re Prudential Lines Inc.*, 158 F.3d 65 (2d Cir. 1998) ("*Prudential IV*"). We refer to the district court decision in this case as "*Prudential V.*" *In re Prudential Lines*, No. 05 Civ. 2810, 2005 U.S. Dist. LEXIS 20657 (S.D.N.Y. Sept. 21, 2005).

claims of the Claimants. *Prudential IV*, 158 F.3d at 68-69. Under the bankruptcy plan approved by the bankruptcy court in 1990 (the "Plan"), "to the extent necessary to obtain payment by . . . [an] insurer," the Trustee was "authorized to enter into arrangements" whereby the Trustee would pay claims "in cash" and would then be repaid the amount of the deductible by the Claimant in return for a claim against the Trust for that amount. Bankruptcy Plan § 4.05.07(a)(i); *Id.* The Trustee was authorized "alternatively [to] enter into any lawful arrangement designed to achieve the same purpose." Bankruptcy Plan § 4.05.07(a)(i). The Plan also contained a provision, which authorized that any setoff owed by Prudential to an insurer be shared ratably among the Claimants and subtracted from each Claimant's individual recovery in much the same way as the deductibles (that is, each Claimant, out of the funds received in payment of his claims, would return to the Trustee his ratable share of the setoff and receive in exchange a claim for that amount). Bankruptcy Plan § 4.05.07(a)(iv). In order to have funds with which to pay claims, thus satisfying the requirement of the policies that Prudential "pay first," the Plan directed the Trustee (i) to set aside $300,000 to be used by the Trustee to make payments to some of the Claimants; (ii) to submit to the Insurer for reimbursement; (iii) to use that reimbursement to pay additional Claimants; and (iv) to again submit for further reimbursement from the Insurer and to repeat the process so that "the $300,000 [would be] available as needed on a sustaining basis for use in funding the payment of [insurance claims]." Bankruptcy Plan § 4.05.07(a)(i). Because the aggregate claims were vastly larger than the $300,000 set aside for this purpose, the Plan included a provision that funds were not to be paid out to Claimants unless "adequate assurances and documentation" were received by the Trustee that it would be reimbursed for the moneys so paid out in claims. *Id.* If there were money remaining after payment of all claims, the Trustee was to petition the bankruptcy court to use these funds to pay on

4

a pro-rata basis those claims issued to Claimants in exchange for their return of the portions of the claim payments attributable to the deductibles and any setoff. § 4.05.07(a)(v).

It was of course foreseen that this cumbersome procedure of first paying claims in small amounts, then seeking reimbursement from the Insurer, and then using the reimbursed funds to pay additional claims – and repeating the process hundreds, or even thousands, of times – would take a very long time and require very considerable administrative effort and expense. For that reason, the Trustee in 1993 sought to put in place a different, more efficient structure, referred to as the "Recycling Plan," to accelerate the process. In brief, under the Recycling Plan, the Trustee would pay each claim and simultaneously receive back from the Claimants a loan of the full amount of the payment. The Trustee would then submit the payments to the Insurer for indemnification and use the indemnity payments to repay the Claimants's loans. *Prudential IV*, 158 F.3d at 69-70. Under this Recycling Plan, no money actually changed hands when the Trustee paid on claims and received back a loan of the proceeds.

This court sustained the Insurer's objections to the Recycling Plan because the Claimants "received nothing of value from Prudential, and Prudential sustained no true loss" in making the payments; we found that the Recycling Plan amounted to a "sham" with respect to Prudential's obligation to pay first, which did not "trigger[] an indemnification obligation under New York law." *Id.* at 74.

Rebuffed by this court's rejection of the more speedy and efficient Recycling Plan, the Trustee then returned to the dictates of the 1990 Bankruptcy Plan and prepared what we refer to as the Proposed Payment Structure. The Proposed Payment Structure has the following characteristics: (1) Within the limits of the $300,000 retention, the Trustee pays claims of Claimants. (Presumably,

5

the Trustee would not pay until it received the Insurer's approval (or a court order) as to the validity and amount of the particular claim and the propriety of the payments structure.) (2) These Claimants return to the Trustee (in exchange for a deferred claim) the portion of the payment attributable to the deductible amount, plus their pro-rata share of any setoff. (3) The Trustee seeks and receives indemnification from the Insurer in the amount of the claim payment, minus the deductible and the Claimant's ratable share of the setoff. (4) The Trustee uses the reimbursed funds to make further payments to Claimants. (5) The process repeats itself until all Claimants are paid. (6) After this process is complete, any remaining cash will be distributed to the Claimants pro-rata on their limited claims for recovery of the amounts attributable to the deductible and setoff.

The setoff envisioned by this Structure results from the following. When Prudential went into bankruptcy, it owed the Insurer approximately $1.2 million in unpaid premiums and assessments on four years (out of forty-one) of the policies (the "Unpaid Premiums"). In 1992, in *Prudential I*, the Insurer sought, and was granted by the bankruptcy court, the opportunity to setoff the Unpaid Premiums attributable to the four years of delinquency against indemnity payments made with respect to coverage under the fully paid years (as well as the unpaid years). *See Prudential I*, 148 B.R. at 752.

In order to proceed with payments to the Claimants under the Proposed Payment Structure, the Claimants and the Trustee filed the motion here under review in the bankruptcy court seeking the two rulings. Because the Insurer had withheld any assurance that such payments of claims would be indemnified and had argued that such a structure would violate the requirement of the indemnity policies that claims be paid first by Prudential before any obligation would fall on the Insurer to make its indemnity payment, the motion asked the court to rule on the Insurer's obligation to

6

reimburse the Trustee for claim payments made under this structure. *See Prudential I*, 148 B.R. at 749 ("Should the [Insurer] refuse to provide indemnity in breach of its obligations under the policies, we [, the bankruptcy court,] have no doubt that we possess the necessary power to provide adequate assurance of reimbursement."). In addition, the motion asked the court to approve the ratable allocation of the Insurer's $1.2 million setoff among all of the indemnity payments to be made on account of the Claimants' claims. That is, as to each indemnity payment relating to a particular Claimant, the Insurer would deduct that proportion of the $1.2 million setoff equal to the proportion of that Claimant's approved claim to the aggregate approved claims. Thus an average of around $120 would be setoff against the reimbursement paid on account of the claims of approximately 10,000 claimants, and the Insurer would recover its $1.2 million setoff piece-by-piece as it reimbursed the Trustee for the claims paid.

The bankruptcy court denied both parts of the proposed motion, and the district court affirmed. The courts gave the following closely related reasons. The courts ruled that the Proposed Payment Structure was like the sham disallowed in *Prudential IV* as not conforming to the "pay-first" requirement of the indemnity policies. The provision requiring the Insurer to pay the indemnities before satisfaction of its setoff was found to be tantamount to giving the Claimants a "direct claim" against the Insurer, which is prohibited by New York law, as explained in *Prudential IV*. Finally, the courts viewed the proration of the setoff as inconsistent with both the "pay first" provisions of the insurance policies and the Bankruptcy Plan. We respectfully disagree.

**DISCUSSION**

A. The Pay-First Provisions of the Indemnity Policies.

Because of lack of sufficient funds, the bankrupt estate was not capable of paying the

7

aggregate claims and then submitting them to the Insurer for indemnification. To circumvent that problem, the Trustee and the Claimants developed the seriatim approach set forth in the Bankruptcy Plan and now in the Proposed Payment Structure. The Insurer contends essentially, in support of the rulings below, that the Structure does not respect the Insurer's right to withhold indemnity payments until the claim has first been paid. We disagree. The Proposed Payment Structure is elaborate and cumbersome precisely because it has been designed to conform to the Insurer's right to pay on account of a claim only after the insured has paid the claim.

If in another context an insured were simply to take up one claim at a time, paying one claim, then submitting that payment to the Insurer for indemnification, then paying a second claim and subsequently submitting that payment for indemnification, and continuing in that fashion, there would be no conceivable argument that it was violating the pay-first requirement of the indemnity policy. The fact that under the Proposed Payment Structure this sequence has been planned in advance, rather than occurring haphazardly, does not change the fact that the Trustee does not submit a claim to the Insurer until after having made payment thereon to the Claimant.[2]

---

[2] To the extent it is arguable that the Insurer's right to have the claim paid first is not respected as to the portion of his claim that each Claimant returns to the Trustee (against a further claim), which is attributable to the policy deductible, the Insurer has abandoned the contention because this court rejected the same contention in *Liman v. American Steamship Owners Mutual Protection and Indemnity Ass'n*, 299 F. Supp. 106 (S.D.N.Y. 1969), *aff'd*, 417 F.2d 627 (2d Cir. 1969) (per curiam), *cert. denied*, 397 U.S. 936 (1970), and, in *Prudential II*, 170 B.R. at 241 n.13, the district court, citing *Liman*, rejected the Insurer's argument. On the other hand, the Insurer does contend that the claims will not have been paid prior to the demand for indemnification to the extent that the Trustee's payment to Claimants will withhold that Claimant's pro-rata portion of the Insurer's $1.2 million setoff. This contention is discussed below.

The main thrust of the Insurer's argument, and of the rulings of the courts below, is that the Proposed Payment Structure, like the previously rejected Recycling Plan, is a sham, which should be rejected – for the same reasons as given in *Prudential IV*. But that Plan was significantly different from the present Proposed Payment Structure.

As discussed briefly above, the Recycling Plan, which we rejected in *Prudential IV*, worked as follows. Instead of paying individual claims and waiting for repayment from the Insurer, as in the Proposed Payment Structure, the heart of the 1998 Recycling Plan was that, simultaneous with the receipt of payment of a claim, each claimant would lend the money received back to the Trustee. *Prudential IV*, 158 F.3d at 69-70. No cash would change hands. The Trustee would simply issue a non-recourse note to the Claimant. Using that procedure, the Trustee rapidly "paid" claims exceeding $60 million, without actually disbursing any cash, and then submitted the aggregate amount of those assertedly paid claims to the Insurer for reimbursement. We reasoned in rejecting the proposal that the "[t]he only detriment assumed by Prudential vis-a-vis each Claimant is a wholly non-recourse debt, which in financial terms is – and is intended to be – nothing . . . . [T]he Asbestosis Claimants received nothing of value from Prudential, and Prudential sustained no true loss." *Id*. at 73-74. The transactions were found to be a "sham" designed to provide an appearance of having paid first, so as to appear to comply with the cumbersome pay-first requirement of the indemnity policies without actually doing so. *Id.* at 74.

In concluding that our ruling in *Prudential IV* bars the Proposed Payment Structure, the bankruptcy court and the district court read far more into that ruling than is there. The Recycling Plan represented an effort to avoid the time-consuming inefficiencies that would result from the

9

cumbersome process of first paying small numbers of claims, and having to wait before payment of further claims to receive reimbursement on the previously paid claims. The device embodied in the Recycling Plan essentially created fictional prior payments to escape the obligation to make prior payment. Our ruling rejecting that fiction, however, in no way implied that the Trustee's shortage of funds, which would effectively prevent the Trustee from paying all the claims without receipt of reimbursement, would also prevent the Trustee from seeking indemnification *after* making a payment and using the funds received pursuant to that indemnification to pay further claims. The Proposed Payment Structure is not subject to the criticisms of *Prudential IV*. It is not a sham. In the case of each paid claim, the Claimant will have received, and the Trustee will have paid, actual cash. Each payment under the Proposed Payment Structure is made prior to seeking indemnification for that payment. In the event the Insurer were to fail, by reason of insolvency or for whatever reason, to pay the indemnity provided by the insurance policies, the Trustee would have no way to recover the cash paid out to the Claimant. We reject the contention, on which the bankruptcy court and the district court relied, that our ruling in *Prudential IV* invalidating the Recycling Plan similarly calls for the invalidation of the Proposed Payment Structure.[3]

---

[3] In *Prudential IV*, we also looked to New York law, which governs these policies, and for very similar reasons found that the Recycling Plan was barred because it amounted to a forbidden "direct action" against the Insurer. *Prudential IV*, 158 F.3d at 74-76. In considering New York law, we distinguished one leading New York case from the Recycling Plan at issue primarily on the grounds that, though it appears that the New York courts had blessed a similar arrangement, we noted that "the non-party lender in [the New York case] performed a real financial service for a real financial reward, whereas the recycling of funds by the [Prudential] Trustee here is an illusion." *Id.* at 76 (discussing *Feldman v. New York City Health & Hosps. Corp.*, 107 Misc.2d 145, 437 (N.Y. Sup. Ct. 1981), *rev'd*, 445 N.Y.S.2d 555 (N.Y. App. Div. 2d Dep't 1981), *rev'd*, 56 N.Y.2d 1011 (N.Y. 1982)). For the same reason that the Proposed

10

B.  The Insurer's Right to Setoff Prudential's $1.2 Million in Unpaid Premiums.

The Insurer asserts that the handling under the Proposed Payment Structure of its right of setoff for the liability of Prudential for $1.2 million in unpaid premiums for four years of policies violates the terms of the indemnity policies and the Bankruptcy Plan.  The lower courts so found.  We disagree for several different reasons.

It is important to understand at the outset how this right of setoff accrued to the Insurer as the result of Prudential's unpaid premiums on four policies.  Initially there was no right of setoff.  Prudential had failed to pay the required premiums for policies covering four (of the forty-one) years of coverage.  For that reason, it appears the Insurer could have rejected claims submitted under the policies for the four unpaid years.  Prudential's failure to pay its premiums, which made the four unpaid policies voidable, however, had no effect on the other policies, which were fully paid.

In 1992, the Insurer, presumably fearing that the Trustee would simply present claims arising under the thirty-seven years of fully paid policies, asked the bankruptcy court to rule that "it is entitled to offset the 1979, 1983, 1984 and 1985 past-due premiums and assessments against the benefits to be paid the Asbestosis Claimants under fully paid policies for different insurance years." *Prudential I*, 148 B.R. at 750.  The bankruptcy court noted that it would allow the Insurer to setoff the unpaid premiums against all policies, including the fully paid ones, but that the Insurer could not both use the unpaid premiums to invalidate the policies for the unpaid

Payment Structure satisfies the policies as a matter of contract interpretation because the Trustee will be doing exactly what the contract anticipated, so too New York law poses no obstacle because the Trustee will be making real payments.

11

years and at the same time apply the debt for unpaid premiums by setoff to indemnity payments made on fully paid policies. Thus, the bankruptcy court indicated that, in granting the Insurer's motion to be allowed to setoff the unpaid premiums against indemnity payments on fully paid policies, it would also bar the Insurer from relying on the nonpayment of premium as a basis for refusing to indemnify under the unpaid policies. *Id.* at 752 (Insurer "could no longer use nonpayment as a reason not to indemnify under the relevant policies if coverage were triggered.").[4]

The Proposed Payment Structure, as noted above, provides that when a Claimant receives payment in cash on account of his claim, he will return to the Trustee his pro-rata share (ratably allocated among all the claims of the Claimants) of the $1.2 million setoff, in return for a limited claim to recover the Claimant's ratable share of any funds that may remain in the Trustee's possession after paying all the claims and receiving the Insurer's indemnification for those payments. Based on the estimate of 10,000 Claimants, the average setoff relating to each claim would be approximately $120.

The Insurer's principal argument concerning the setoff is that the Insurer is entitled to setoff the entire $1.2 million, dollar for dollar, against all claims submitted to it before being obligated to make any indemnity payments in cash. It adds that because the setoff right of $1.2 million exceeds the $300,000 retained by the Trustee, that the Trustee can never be in a position

---

[4] This opinion assumes because the bankruptcy court so indicated in *Prudential I* that, if the Insurer were to move for leave to set off the $1.2 million in Unpaid Premiums against all claims, relinquishing any claim of right to reject claims made under the unpaid years, the bankruptcy court would grant the motion. In making this assumption, however, we in no way imply that the bankruptcy court is under a direction to do so.

to make prior payments to Claimants that the Insurer would be compelled under the policies to indemnify in cash. We reject both arguments.

The Insurer's argument misinterprets and distorts the right accorded to it by the bankruptcy court. The Insurer essentially sought two alternative forms of relief. It argued first that the Unpaid Premiums should absolutely protect it from any obligation to make payments under any of the policies. *Prudential I*, 148 B.R. at 752-53. In the event that relief were denied, it sought, as a fallback position, to be accorded the right to setoff the Unpaid Premiums against payments on fully paid years, as well as unpaid years. *Id.* at 750. The bankruptcy court denied the first request, which would have barred all indemnity payments, but granted the second, *id.* at 753, without specifying the manner in which the setoff would be taken. (The already approved Bankruptcy Plan, *id.* at 735, provided that the setoff of debts owed by Prudential to an insurer be ratably shared among the Claimants.) The Insurer asks us to interpret the bankruptcy court's decision granting a broader opportunity to setoff in a manner which would be unreasonable for three different reasons. First, it asks that we construe a decision, which on its face simply granted it a broad opportunity for setoff, as effectively absolving it from any obligation to make payments under the policies. Second, it asks us to interpret the decision as granting exactly the relief the bankruptcy court, in the same decision, refused to grant. Finally, it asks us to interpret the bankruptcy court's decision in a manner contradictory to the Bankruptcy Plan, which expressly envisioned proration of the setoff. We believe this is not a reasonable interpretation of the bankruptcy court's silence as to how the setoff would be allocated. It seems most reasonable to interpret the ambiguous (or incomplete) provision of the setoff order as intending, consistent with the Bankruptcy Plan, to allow the setoff of the Unpaid Premiums against all policy years

13

prorated among all Claimants, and not to interpret it as an absolution, parlaying the Insurer's immunity as to four unpaid policy years into an immunity also covering thirty-seven fully paid years.

A further defect in the Insurer's argument is its assumption that the excess of the $1.2 million owed to it over the $300,000 retained by the Trustee to pay claims makes clear that the Trustee cannot comply with the pay-first requirement so as to trigger an obligation to indemnify in cash. This assumes that the terms of the policies forbid the Trustee from using financing to pay claims. The assumption is incorrect. *Cf. Prudential IV*, 158 F.3d at 71 ("At oral argument, the parties agreed that there are other available mechanisms (albeit less efficient) for triggering American Club's indemnification obligations."); *id.* at 76 (distinguishing New York case authorizing third-party lender as a case with a "real financial service [provided] for a real financial reward"); *Prudential II*, 170 B.R. at 242 n.14 ("As it presents an entirely different situation, I take no position on the permissibility of triggering indemnification by borrowing funds from third parties other than claimants."); David Gray Carlson, *The Bankruptcy Code: Indemnity, Liability, Insolvency*, 25 Cardozo L. Rev. 1951, 1963 (2004) (arguing that our decision in *Prudential IV* "virtually invited" the Trustee to look to a third-party lender). Under the Proposed Payment Structure, a small portion of the claim payment is financed by the Claimant. If too large a portion of the claim payment were financed by the Claimant, the prior payment to the Claimant might well be deemed a "sham," as was found under the Recycling Plan, but the same is not true of such financing of a small portion.

A further reason for rejecting the Insurer's position lies in the ruling of this court in *Liman v. American Steamship Owners Mutual Protection and Indemnity Ass'n*, 299 F. Supp. 106

14

(S.D.N.Y. 1969), *aff'd*, 417 F.2d 627 (2d Cir. 1969) (per curiam), *cert. denied*, 397 U.S. 936 (1970). *Liman* involved an identical policy issued by the same Insurer to a different shipping line. *Prudential IV*, 158 F.3d at 72. At issue in that case was a proposed structure for the prior payment of claims under which each claimant, upon receipt of payment on his claim, would lend back to the estate the amount of any deductible under that policy, so that the funds of the bankrupt estate would not be gradually diminished by the repeated receipt of indemnifications which covered less than the full amount of the payment on the claim. *Liman*, 299 F. Supp. at 108-10. In return for lending back the amount of the deductible, the claimant would become a "general creditor" of the estate in the amount of the deductible. *Id.* The Insurer contended, as here, that this feature was not compatible with the "pay-first" provisions of the indemnity policies. The district court in *Liman* rejected the argument, *id.* at 110, and this court affirmed. 417 F.2d 627-28 (2d Cir. 1969) (per curiam). The pay-first provisions of the indemnity policies did not forbid using borrowed moneys to pay the claim, and the trustee was paying the deductible portion of the claim with funds borrowed from the claimants. Furthermore, the district court observed that the matter should be of "no concern to the [Insurer], since it is not required to reimburse the estate " for the amount of the deductible in any event. *Liman*, 299 F. Supp. at 110.

In accordance with the *Liman* ruling, in an unappealed portion of *Prudential II*, the district court found in this case that the same method for financing payment of the deductible portion of the payment of each Claimant's claim did not violate the Insurer's right under its indemnity policies to have the claim paid first, before triggering the Insurer's indemnification obligation. 170 B.R. at 241 n.13.

The treatment of the small amounts returned by each Claimant to the Trustee, by reason of

15

the Insurer's right of setoff, is structured almost identically to what we approved in *Liman* as to the deductible, and what was approved by the district court in this case and was not appealed. We find that the setoff right given to the Insurer under these circumstances does not violate the pay-first provision of the policies.[5]

As noted above, the Insurer also renews a different argument to the effect that Prudential's failure to pay the premium on four of its policies bars Prudential (and its Trustee) from making claims for indemnity on any policies, including those which were fully paid. The Insurer argues that the terms of each year's policy required that *all* policies be fully paid before the Insurer would have an obligation to pay on *any* of them.

There are two sufficient reasons for rejecting this contention. First, it was waived by the Insurer's failure to appeal a ruling of the bankruptcy court, which rejected the argument. Second, the contention is not borne out by the terms of the policies.

In *Prudential I,* the bankruptcy court considered and rejected this argument:

> The insurance policies [Insurer] issued to [Prudential] were separate and distinct contracts. No policy language conditions indemnification on the payment of premiums and assessments due under different policies. Each policy contained its own period of coverage, deductible, and policy limit. Trustee is therefore free to choose among the paid policies for ultimate indemnification of asbestos claims according to his determination of which policies benefit the estate.

*Prudential I*, 148 B.R. at 753.

---

[5] Nor is the Insurer correct in arguing that the claim given by the Trustee to the Claimants in exchange for their return of proceeds attributable to the setoff is necessarily "worthless." If payments are made and indemnities reasonably paid without giving rise to excessive and wasteful administrative expenses, the Trust should still be in possession of a significant portion of the $300,000 retained at the conclusion of the process to be used to pay those claims.

This aspect of the bankruptcy court's decision was not appealed. *See Prudential II*, 170 B.R. at 242 (this part of *Prudential I* not appealed to district court). As a result, the Insurer is barred from now raising the same contention. *See, e.g.*, *In re Klein Sleep Prods., Inc.*, 78 F.3d 18, 29 (2d Cir. 1996) (challenge to decision of bankruptcy court not raised before the district court considered waived).

Even if this argument were not barred by the prior unappealed ruling, the language of the policies on which the Insurer relies does not support its contention. The language contained in each year's policy was to the following effect: "[S]hould the Assured . . . become insolvent or bankrupt . . . the [Insurer] shall not be liable for any claims whatsoever *under this policy* unless within sixty (60) days . . . there are paid to the [Insurer] . . . *all premiums due* . . . ." (emphasis added). The Insurer contends that the phrase "all premiums due" must be interpreted to mean all premiums due on *any* policy. But the sentence explicitly refers to "claims under this policy." The policy language in question makes no mention of other policies in effect as between the Insurer and insured. The most natural reading of this sentence is to mean that the Insurer shall not be liable for claims under the policy unless all premiums due under it have been paid in full.

At best the language is ambiguous. Under New York law, ambiguity is of no help to an insurer seeking to avoid providing coverage. *See, e.g.*, *Burriesci v. Paul Revere Life Ins. Co.*, 679 N.Y.S.2d 778, 779 (N.Y. App. Div. 4 Dep't 1998); *see also Village of Sylvan Beach, N.Y. v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995).

The Insurer's final argument is that the Bankruptcy Plan itself requires that it be paid its setoff before it must indemnify the Trustee. We find no merit whatsoever in the argument. There is indeed a complex, lengthy provision in the Plan which refers to setoff and recoupment and

17

which employs the phrase "to the extent" or "to the extent possible." The provision in relevant part is set forth in the margin.[6] The Insurer contends that this provision means that pro-rata distribution of the setoff among Claimants is permissible only *to the extent* the funds available to the Trustee are greater than the total setoff. The problem with the argument is that the provision simply does not say what the Insurer says it says. The argument is frivolous.

We have reviewed the various reasons given by the bankruptcy court and the district court for rejection of the Trustee's motion and find them to be erroneous. Nor do we find any valid reasons asserted by the Insurer for rejection of the Proposed Payment Structure.[7]

## CONCLUSION

The judgment of the district court is reversed. The case is remanded for proceedings in accordance with this opinion.

---

[6] "To the extent there shall be a determination that amounts are due and owing from [Prudential] to a Club or insurer which the Club or insurer may offset or recoup against amounts due to [Prudential] . . . or any claimant in respect of [Allowed Insurance] Claims [beyond the policy's deductible] . . ., and to the extent possible, each holder of an affected Allowed Insured Claim shall share ratably (with all other holders of affected Allowed Insured Claims based on the allowed amount of each such Insured Claim) (a) a claim against the offset [as represented by a claim against the Trust] . . . and (b) a claim in respect of any remaining insurance rights relating to such affected Allowed Insured Claims and shall receive in distribution therefore, to the extent recovered, cash from the insurer or Club equal to such holder's ratable share." Bankruptcy Plan § 4.05.07(a)(iv).

[7] We of course make no ruling on the validity or amount of any particular claim.